### JAMES BRAY *v.* DANIEL WHEELER, JR.

*Infant. Emancipation. Practice.*

A debt due to a minor for his services after he has had his time given to him by his father, from one who had knowledge of the emancipation, is protected from attachment by the creditors of the father by means of the trustee process.

At what age he will emancipate his child rests in the discretion of the father. There is no period in the youth of the child prior to which he may not do it, so far, at least, as any rights of his creditors are concerned.

In an action by an emancipated minor for the recovery of wages earned by him since his emancipation, if the defendant has been trusteed on account of them by a creditor of the father, in a suit which is still pending, he, the defendant, is not entitled to have the jury instructed as to the effect upon his liability if the contract between the father and son was merely colorable, if there is no evidence tending to show that it was so, or if there is no evidence tending to show that the plaintiff in the trustee process was a creditor of the father at the time of the contract of emancipation.

ASSUMPSIT for work and labor. The plaintiff being a minor prosecuted the action by his next friend. Plea, the general issue ; trial by jury, June Term, 1856,— POLAND, J., presiding.

The plaintiff introduced testimony tending to prove that he was fourteen years old on the 6th of September, 1855, and that in the spring of 1855 his father, Michael Bray, agreed to give him his time and earnings in consideration of some sheep which were given to him in his infancy, and had been disposed of by his father ; that on the 23d of April, 1855, the defendant applied to Michael Bray to hire the plaintiff, and that said Michael told the defendant that he had given the plaintiff his time and earnings, and that if the defendant hired him he must pay his wages to him ; and that a contract was finally concluded, by which the plaintiff was to go to work for the defendant for seven dollars per month, the wages to be paid to the plaintiff and not to his father ; and that the plaintiff thereupon went to work for the defendant and worked four months and ten days.

The defendant's testimony tended to prove that he made the contract with Michael Bray alone, the plaintiff not being present at the time, and that he was not informed and had no knowledge whatever that the plaintiff had had his time given him until about the time that the plaintiff left his service in September, 1855. It .

appeared that just before this time one Theopilus Drew commenced a suit against Michael Bray, and summoned the defendant as his trustee, and that said suit was still pending, and the defendant testified that he had no knowledge that the plaintiff was to have, or claimed to have his time and earnings until after he was so summoned as trustee.

There was no evidence whether the said Michael Bray was in fact indebted to said Drew, and no evidence whether said Drew had or claimed to have any debt against said Bray at the time the plaintiff commenced work for the defendant.

The defendant claimed that it was not competent for the plaintiff to be emancipated by his father at so early an age, and so requested the court to charge the jury, and also that if the emancipation of the plaintiff was merely colorable the defendant would be entitled to recover. The court charged the jury that if they were satisfied from the evidence that the plaintiff had been emancipated by his father, and by agreement between them was entitled to his time and earnings, and that when the contract for his services was made this was made known to the defendant, and he hired the plaintiff with a knowledge of this fact, and promised to pay his wages to him, then the plaintiff would be entitled to recover; but that if the defendant made the contract with Michael Bray for the services of his minor son without any knowledge that the son was to have his earnings, then the plaintiff could not recover.

The jury rendered a verdict for the plaintiff. The defendant excepted to the charge and to the refusal of the court to charge as requested.

*T. Howard*, for the defendant.

1. The policy of the law requires some limit to the emancipation of the infant, so that he may not control his time and earnings before he has some legal or moral discretion. A boy of thirteen years ought to be held incapable of being *emancipated*, as within fourteen years he cannot make a testament of chattels; 2 Kent 242. By the civil law the infant had this power at seventeen. By the statute of New York he may exercise it at eighteen. He cannot make a valid contract of marriage under fourteen; 2

Kent *ub sup.* A minor is not considered capable of choosing a guardian until he is fourteen years old, and can it be possible that he can be able to choose his occupation or profession at an earlier age? In short, the law regards the infant under fourteen as incapable of any discretion, and any attempt to confer it by the father ought to be forbidden.

2. The court ought to have instructed the jury that if the emancipation was merely colorable the defendant would be entitled to a verdict.

*T. Bartlett, Jr.,* and *G. C. & G. W. Cahoon,* for the plaintiff.

After the plaintiff was emancipated the avails of his labor were his own, and his father could not sue to recover the same in his own right; *Chilson* v. *Philips,* 1 Vt. 41; *Chase* v. *Elkins,* 2 *ib.* 290; *Chase* v. *Smith,* 5 *ib.* 556; *Tillotson* v. *McCrillis,* 11 *ib.* 477; *Whiting* v. *Earle & Howard, trustee,* 3 Pick 201; *Corey* v. *Corey,* 19 *ib.* 29.

The plaintiff being entitled to his wages, could not be defeated by the trustee suit; as the defendant was indebted to the plaintiff, and not to his father.

The opinion of the court was delivered by

Isham, J. The principles involved and decided in the cases of *Chase* v. *Elkins,* 2 Vt. 290, and *Tillotson* v. *McCrillis,* 11 Vt. 477, seem to dispose of the questions arising in this case. In the first case it was held that a father may relinquish to his minor son his right to his time and earnings, and that property purchased by the minor and payed for by such earnings can be held by him as against the creditors of the father. In the second case it was held that such a contract is valid for a part as well as for the whole period of the son's minority. If property acquired in that manner can be held by the minor, so that it cannot be attached by the creditors of the father, the conclusion necessarily follows that debts due the minor for his services or earnings are equally to be protected from attachment under the trustee process. The principle upon which the right of the father to relinquish to his minor son his right to his time and earnings during his minority rests, is the presumed benefit which the minor himself may derive from

it.   As was observed by Justice HUTCHINSON, in *Chase* v. *Elkins*, the father should have this right, that he may consult the capacity and inclination of his son, and direct the whole for their mutual interests.   The law specifies no period during the minority of the son in which that right may not be exercised by the father.   The whole matter is left to the care and discretion of the father as his natural guardian.   The right of the father to relinquish his right to the time and earnings of his minor son has at all times been exercised, in placing the son as an apprentice to some useful trade, or to acquire a professional education, and we apprehend no one will question the right of the father to exercise his own judgment and discretion in cases of that kind, and at any period of the son's minority.   ˙ The same right must exist in cases of this kind.   Whether it is competent for the father to rescind the contract giving to his minor son his time and earnings, so that he can afterwards claim them, is not now a question arising in the case.   It is sufficient to observe that when such a contract is made by the father with his minor son, and that contract is unrescinded by the father, it is binding on third persons.   When third persons have contracted for the services of the minor, knowing that his time and services have been given to him, and that he is entitled to his earnings, it is not for them to avoid payment to the minor of the sum agreed to be paid by questioning the right of the father to give his son the benefit of whatever he can earn by his labor.   There is no more propriety in courts of law interfering with such an arrangement, whatever may be the age of the minor, than with any other domestic arrangement which the father, in the exercise of his discretion, may deem best to make for the general interest of his family. The case under consideration falls within these general principles. The fact is stated in the case that Michael Bray gave to the plaintiff, his son, then a minor between thirteen and fourteen years of age, his time and earnings, in consideration of some property which had been given to the plaintiff during his infancy, and which had been used by the father.   The jury have found that the defendant hired the plaintiff to work for him for the sum of seven dollars per month, and for his labor agreed to pay the money to him, and not his father.   The contract itself was made by the

father in behalf of his son, and with an express understanding with the defendant that he had given his son his time, and that his wages belonged to, and were to be paid to him. Under those circumstances we can entertain no doubt as to the right of the plaintiff to sustain this action.

We perceive no error in the neglect of the court to charge the jury, that if the contract of the father with his son was merely colorable, that the plaintiff was not entitled to recover. In the first place it does not appear from the case that any evidence was introduced showing that the time and labor of the son was given to him by his father for the purpose of avoiding the claims of his creditors; and without such evidence tending to prove that fact, the court were under no obligations to charge the jury on that subject. In the second place, if we were to consider that such a contract could be avoided on the ground of fraud, still, it does not appear that the plaintiff in that trustee process was a creditor of the plaintiff's father at the time he gave his son his time and earnings. The fact is expressly stated in the case that there was no evidence showing such indebtedness at that time. A subsequent creditor cannot avoid such a contract. That point was expressly determined in the case of *Chase* v. *Elkins*. Judge HUTCHINSON in that case observed that, " the creditor must show his claim prior to that contract, or he cannot complain of it as a fraud upon him; and as that does not appear, the question of fraud in fact does not arise.

We think the judgment of the county court must be affirmed.