## Bobo vs. Bryson.

A witness will not be required to answer, if at all and for any purpose, a question as to any previous conversations held by him with others, out of court, in reference to any fact, unless his attention has been particularly directed to the fact and he interrogated in direct reference to it.

A witness is protected from testifying as to any communication he may have made to his attorney in confidence.

A father can make a valid gift of his minor son's services to himself, so as to be beyond reach of the father's creditors.

*Appeal from Lawrence Circuit Court.*     ·

Hon. William C. Bevens, Circuit Judge.

Byers, for the appellant.

In this case, Robert S. Bryson was insolvent, owned neither horses nor oxen; was in the habit of hiring out his sons and appropriating the proceeds of their labor to his own use. The appellee lives with his father; is one of the family, a minor; the father by law entitled to his labor or the proceeds thereof. The father has just as full and complete legal right to the services of his son, and to the proceeds of his labor, as he has to his horse, and we cannot comprehend the ethics that would permit the father to give one and not the other. See *Bell vs. Hallenback, et al., Wright's (Ohio) Rep.* 751; *Chase vs. Elkins,* 2 *Verm.* 290; 9 *Ala.* 933; 10 *Ala.* 348.

It appears to us that we had the right to ask Robert S. Bryson the question which the plaintiff objected to and which the court would not permit him to answer. It might be a privileged communication as to Robert Bryson, and he himself might

object, probably; but no other person. If he did not object, and was willing to answer the question, no other person had a right to object.

Hon. THOMAS JOHNSON, Special Judge, delivered the opinion of the court.

The first point presented relates to the propriety of the ruling of the Circuit Court, in excusing the witness, Robert S. Bryson, from answering the question propounded to him by the defendant. The question was: Did you not, about the time or a short time before David McKnight let your son, the plaintiff, have the roan horse, tell J. W. Townsend, esq., in his office, in the town of Smithville, that you were a poor man and in embarrassed circumstances, and that you had neither horse nor oxen, and how you could buy a horse in your son's name, so that he could hold him, and you to have the use of his horse." The witness was properly excused from answering the question, as no foundation had been previously laid to authorize its introduction. He had a right to have his attention particularly directed to the fact, and to be interrogated in direct reference to it, before he could be compelled to state what he had said to others out of court, and when not acting under the solemnity of an oath. His declarations out of court, even admitting that they could have been introduced on the trial of this case, could only have been received for the purpose of exhibiting the improbability of his story, and lessening the credit due to it before the jury. If admissible at all it could only have been to contradict what he had previously said, and as a matter of course, he having said nothing in regard to the purchase of his son having been the result of a secret arrangement between him and himself, no declaration that he had made could be drawn out to contradict his statement. But the witness was protected upon another and higher ground. The statement, if made at all, was a communication made in confidence to an attorney. This protection extends to every communication which the client makes to his legal adviser, for the purpose of professional advice or aid,

upon the subject of his rights and liabilities. Nor is it necessary that any judicial proceedings in particular should have been commenced or contemplated; it is enough if the matter in hand, like every other human transaction, may by possibility become the subject of judicial enquiry. The great object of the rule seems plainly to require that the entire professional intercourse between client and attorney, whatever it may have consisted in, should be protected by profound secrecy. See 1st. *Greenleaf*, 303. , The next and only remaining question involved is, whether Robert S. Bryson, the father, could make a valid gift of his minor son's services to himself, so as to be beyond the reach of his own creditors. The affirmative of this proposition we consider well settled by the authorities. The case of *Tillotson vs. Cribbes*, 2 *Vermont*, 477, is directly in point. On the trial of that case in the county court, the plaintiff gave evidence tending to prove that, in the summer of 1834, he being then nineteen years of age, his father, Joseph Tillotson, told him that he might go to work and have his wages. He labored for others that summer and took his pay. In September he went to work for one Cutter, for whom he labored about six weeks, and on Cutter's enquiry of Joseph Tillotson, he was directed to pay plaintiff the amount of his wages. The plaintiff purchased of Cutter a pair of steers, and paid for them by turning his wages, paying a town order of about five dollars, and agreed to pay about three dollars more, which was afterwards paid for him by his uncle Moses Sargent. The court, by COLLAMER, J., said " The steers out of which this controversy arose, were undoubtedly the property of the plaintiff· That a father may give to his infant son his time, who thereupon will be entitled to the fruit of his earnings, has been fully decided in. this state." The same doctrine is held by the Supreme Court of Indiana in the case of *Jenison vs. Graves*, 2 *Blackford*, 449. That court in that case said: " The father, it is true, may claim the services of his minor children, whilst they are under lawful age and are supported by him, 1st *Blac. Com.* 45-3. But we conceive he may relinquish that claim at any time, and when

he does the profits of his children's labor belong to tnemselves. The property acquired by a minor son, in such case, is as much his own as if it were a legacy bequeathed to him; and it can not be seized by the creditors of the father." These adjudications are in accordance with the principles of justice, and fully conclusive of the question. The instructions asked for by the defendant were therefore properly refused, and those sought by the plaintiff properly given. The instructions given by the court of its own motion, are substantially the same with those asked by the plaintiff, and consequently are not objectionable.

The judgment is in all things affirmed.

Mr. Justice FAIRCHILD did not sit in this case.