## FAIRHURST VS. LEWIS.

The denial in an answer of facts alleged in the bill, which are not within the personal knowledge of the defendant, must be treated as a matter of pleading, putting in issue merely the allegations, which may be proved by one witness.

It is well settled that a father has the right to permit the son, during minority, to labor for himself and appropriate his wages according to his own inclinations.

Where property is purchased for the son, with his money, and upon an agreement that the deed is to be made to him, and the deed is executed to the father by mistake, he holds the legal title in trust for his son, and his conveyance of the property to the son cannot be held as fraudulent.

### Appeal from Pulaski Chancery Court.

Hon. H. F. FAIRCHILD, Chancellor.

FOWLER & STILLWELL, for appellants.

Jonathan Lewis, the father, was not a competent witness for the appellee. He was in possession of the property in controversy, and the effect of his evidence was to enable him to retain the possession and use of the property. *Gresly's Eq. Ev.* 353, 354, 358; 2 *Cowp. R.* 621; 1 *Hill* (*N. Y.*) *Rep.* 100. Another effect was to release him from liability for rents accruing pend- the suit.

Without the testimony of Jonathan Lewis there was not sufficient proof of the allegations of the bill. And it must be borne in mind that the contest is not between the parties to the mistake, but between one of them and a creditor, and a court of equity will not interfere to correct an alleged mistake in the latter case, unless the proof of it be full, and the relief asked for clearly shown. 1 *Bro. Ch. R.* 342; 6 *Vesey* 333; 9 *Gill's Rep.* 430; 2 *John. Ch. R.* 632; 1 *Story Eq. Dec.* 169.

Appellee being a minor, his father was entitled to the proceeds of his labor, and although invested in land, in his own name, it is still subject to the claims of his father's creditors. *Wright's Ohio Rep.* 751; 2 *Kent's Com.* 162-3; *Freeman's Ch. Rep.* 434.

WATKINS & GALLAGHER, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Goodrich and Boardman were the joint owners of fractional lots No. 2 and 3, in Block No. 1, of Pope's Addition to the city of Little Rock, east of the Quapaw line. Goodrich died, leaving Boardman, who resided in New York, his executor.

On the 8th of December, 1854, Boardman conveyed the lots to Jonathan Lewis, who had occupied a house upon the lots for some ten years before.

On the 15th May, 1855, Jonathan Lewis conveyed the lots to his son, John Lewis, the appellee, but continued to occupy the house upon them.

On the 2d of May, 1855, Jane Fairhurst, the appellant, commenced an action of trespass against Jonathan Lewis for an assault and battery, alleged to have been committed by him upon her; and on the 14th of July, 1855, recovered a judgment against him for $1,000 damages. She sued out an execution upon the judgment, the lots were levied upon, sold, purchased by her at a nominal sum, and a deed executed to her by the sheriff. She afterwards brought an action of ejectment against Jonathan Lewis for possession of the lots, and obtained judgment; and to prevent her from causing a writ of possession to be executed, and to establish his own title to the lots, John Lewis filed the bill in this case.

The substance of the case made by the bill is, that Jonathan Lewis was, and had been for many years, a cripple, was poor, had a large family, and was barely able to support them.

The complainant, John, who was about twenty-one years of age when the bill was filed, had been permitted by his father,

for some ten years before, to go out and labor for himself, and appropriate his wages according to his own inclinations. That he had found employment as a cabin boy, steward, and finally as an engineer upon steamboats running upon the Arkansas and White rivers, supported himself, contributed occasionally to the maintainance of his father's family, by gifts to his mother, and laid up some money from his wages.

That his father, after the death of Goodrich, learning that the lots in controversy were for sale, having lived upon them for some years, and being desirous to secure them as a home, corresponded with Boardman of New York, in relation to the price of them, and on learning the sum demanded, expressed himself as being totally unable to purchase them.

Finally, in the fall of 1855, complainant learning that an agent of Boardman had come to Little Rock, and was offering the lots for sale at the sum of $400, he determined to make an effort to purchase them himself, to take the deed in his own name, but to permit his father and mother to occupy the premises as a home during their lives. Accordingly he borrowed $150 from his uncle in St. Louis, which, together with the money he had saved from his wages, made up the sum of $400. This sum he sent to his father to purchase the lots in his name, the purchase was accordingly made, with the distinct understanding that the deed was to be made to him, and the money was to be deposited with Mr. Wait, of Little Rock, until the deed was executed.

The money was accordingly deposited, and subsequently the deed was executed by Boardman, forwarded to Mr. Wait, and delivered by him to Jonathan Lewis.

But Boardman, by mistake, made the deed to Jonathan Lewis instead of the complainant, John, either from the fact that he confounded their names, or from the fact that Jonathan Lewis had corresponded with him on the subject, and negotiated the purchase with his agent.

Afterwards, when complainant came to Little Rock, and was shown the deed, he expressed surprise and dissatisfaction at its

being made to his father; when his father told him, that rather than send the deed back to Boardman, he would execute a deed to him for the lots himself. This promise of his father was satisfactory, but owing to inattention and the absence of complainant, the execution of the deed was neglected until the following spring; when complainant returning home, and learning that Mrs. Fairhurst had instituted suit against his father for an assault and battery, became uneasy about the safety of the lots, and procured his father to execute to him the conveyance of the 15th May, 1855, which, with the deed from Boardman to his father, was put upon record.

The bill distinctly and positively alleges that the whole of the purchase money was furnished by complainant, that the lots were purchased for him, and the deed was to be made to him, but, by mistake of Boardman, was executed to his father.

These allegations are controverted by the answer of Mrs. Fairhurst; and, on the contrary, she alleges that the purchase money was furnished and paid by Jonathan Lewis, who bought the lots for himself, and took the deed from Boardman in his own name, and for his own use; and that afterwards, and after she had commenced suit against him for damages, he made a voluntary and fraudulent conveyance of the lots to his son, John, for the purpose of defeating the satisfaction of any judgment she might recover against him in the pending action.

The denial of the answer that John Lewis furnished the purchase money, that the lots were purchased for him, that the deed was to be made to him, and that by mistake it was executed to his father, must be treated as a matter of pleading, putting in issue merely the allegations of the bill, as these facts were not within appellant's personal knowledge, and she could only answer, as she did, upon information and belief.

The material allegations of the bill are clearly proven by one witness, and he is supported by two others, in some of the important facts stated by him.

That the father had the right to permit his son, during his

minority, to labor for himself, and appropriate his wages according to his own inclinations, is well settled.

The lots having been purchased for the son, with his money, and upon an agreement that the deed was to be made to him, and the deed having been executed to the father by mistake, he held the legal title in trust for his son, and when he afterwards conveyed the property to his son, he did only what he was bound in equity to do, and what the son could have compelled him to do, by bill, had he refused, regardless of the pending suit of Mrs. Fairhurst against him for damages.

The fact that the son, when he furnished the money to purchase the lots, intended to permit his father and mother to occupy the premises as a home, during their lives, was commendable in him, and does not militate against his right to have the mistake in the execution of the deed corrected, and his title to the property established.

The decree of the chancellor must be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.