## JOHNSON & a. *v.* SILSBEE AND TRUSTEE.

A father consented, in good faith, that his minor daughter should receive to her own use sums which she might thereafter earn by sewing. *Held,* that money thus earned by the daughter, while continuing to receive her support from her father, and to act as his house-keeper, is not subject to the payment of the father's existing debts.

THIS was assumpsit brought by Johnson & Fisher against R. W. Silsbee, and one W. F. Howard, trustee. The only questions raised related to the liability of the trustee. The depositions of the trustee and others were submitted to the court from which the following facts appear. The trustee bought of defendant and of his daughter, J. Arlette Silsbee a sewing machine, for which he agreed to pay the sum of $65.00, no part of which had been paid. They both spoke of the machine as belonging to the daughter, and the trustee understood at the time that it was hers, though her father assisted her in the sale. This machine was purchased by the said J. Arlette of her uncle in Buffalo, N. Y., and she had paid $20.00 cash towards it, and was to have a commission of $5.00 or more on it if she sold it, so that she only owed about $40.00 for it when she sold it. The said J. Arlette Silsbee was and is a minor daughter of defendant, who lives at home with him and acts as housekeeper for her father. He has always boarded and clothed her as other fathers generally board and clothe their daughters, and she has always remained a member of his family and been supported there. She is not emancipated and her father has never given her her time or earnings by any express gift or contract. But she has, with his consent, worked at sewing for the neighbors and earned small sums of money, which have been paid to her, and her father has never claimed them or undertaken to control his daughter in the manner of spending the same, but she has expended a portion of such earnings in purchasing clothing for herself, and the $20.00 paid towards this sewing machine was earned in that way, and paid by the daughter without any direction from the father or any objection on his part. Upon these facts the plaintiffs claim to charge the trustee for the value of the machine ($65.00,) but if they cannot hold that amount then they claim to hold him for the value of the machine, less the amount remaining due for the same ; while the defendant and his daughter claim that the trustee cannot be charged for anything.

*Parkhurst, Baker,* for plaintiffs.

*Parker, Wait,* for J. A. Silsbee, claimant.

SMITH, J. There is no evidence, that the minor bought the machine for, or on behalf of, her father.

Apart from the fact, that the twenty dollars paid came from her earnings, there could be no doubt that the machine was the property

of the minor. So far as it was bought on credit, it was on her cred-
it, not on her father's. Although a father is entitled to the earnings
of his child as a recompense for his liability to support the child,*
he has no power over his child's estate except as his trustee or guar-
dian; 1 Blackstone's Com. 453. "He has no title to the property
of the child, nor is the capacity or right of the latter to take proper-
ty or receive money by grant, gift or otherwise, except as a compen-
sation for services, in any degree qualified or limited during minority.
Whatever therefore an infant acquires which does not come to him
as a compensation for services rendered, belongs absolutely to him,
and his father cannot interpose any claim to it:" see Bigelow C. J.,
in *Banks* v. *Conant*, 14 Allen, 497, p. 498; *Wendell* v. *Pierce*, 13
N. H. 502. If therefore the father had any interest in this machine,
it must have been solely by reason of the fact that it was partly paid
for out of the earnings of his daughter.

In the present case, upon the evidence in the depositions, we find,
as matter of fact, that, when the daughter began to do the work by
which she earned the twenty dollars, the father consented, in good
faith that the wages to be earned by that labor, should belong to the
daughter.

The father did not "put his consent into words;" but his acts (as
detailed in the depositions) relative to the daughter's employment at
various times in sewing, and as to her disposition of the sums which
had thus been earned, justify the inference that he so consented on
this occasion, and thus express his consent as effectually "as words
would have done;" see 5 Am. Law Review. 11, 12. Can this relin-
quishment of the father's right to the daughter's future earnings be
avoided by his existing creditors as fraudulent in law?

A debtor cannot give away his attachable property, to the preju-
dice of existing creditors. But his time and talents are at his own
disposal. If the debtor, instead of laboring to earn wages which his
creditors can attach by the trustee process, chooses to remain idle,
or "to give away his own services by working gratuitously for
another," his creditors have no legal remedy. They "cannot com-
pel him to work and earn wages for their benefit." The laws of this
state do not authorize "the sale of the person of a debtor for the
satisfaction of his debts." *Abbey* v. *Deyo*, 44 N. Y. 353, pp. 346–9;
*Bush* v. *Vought*, 55 Penn. State, 437, p. 441; see also *Williams* v.
*Chambers*, 10 Queen's Bench, 337; *Chippendale* v. *Tomlinson*, 4
Douglas, 318.

If the father can give away his own labor, by working gratuitously
for another, why may he not also give away his right to the future
labor of his child? The creditors of the father cannot attach, or sell
upon execution, the child's capacity to labor. Practically, the fath-
er's right to the childs prospective earnings is worthless unless the
father and the child both choose to make it valuable. There is no
legal process, by which the creditors can compel the father, to make

---

* See *Kelley* v. *Davis*, ante 192.            REPORTER.

the son labor for their benefit.    No law requires the father " to work his son or his daughter as he would work a horse or a slave for the benefit of his creditors ;" Black, J., in *McCloskey* v. *Cyphert*, 27 Penn. State, 220, p. 225.

If the father can give to a third person the right to his daughter's future services, can there be any valid objection to his giving this right to the daughter herself?    We are not to pass upon this question without giving some consideration to the interests of the daughter. She is not a chattel, but is entitled to the care and protection of the law, just as much as her father's creditors.    See Parker, C. J., in *Whiting* v. *Earle*, 3 Pick. 201, p. 202; Isham, J., in *Bray* v. *Wheeler*, 29 Vt. 514, pp. 516–7.    If they can take her future earnings against her will, and her father's will, she is, in effect, reduced " to a condition of qualified slavery."    The law does not contemplate the subjection of the child to any person not standing *in loco parentis*. The consequences to the child of denying the father's power to relinquish his right to the child's future earnings, would often prove extremely pernicious.    If a son anticipates, that his wages will be applied, against his father's will, to pay his father's debts, it is hardly probable that he will labor with much vigor, or earn anything above his support.    The creditors will generally gain nothing, but the son may be ruined by the absence, at the most important time of his life, of some of the strongest incentives to the formation of industrious habits.    We are not now considering the validity of a gift by the father of a claim for wages already due for his own past services, or of a gift by the father of his claim for wages already earned by labor which his minor child has performed without any previous understanding that the avails should go to the child's own use.    Nor is this a case where the arrangement between the father and the child was merely colorable, designed by the parties to cover the earnings of the daughter for the father's use and benefit, and in fraud of his creditors.    See *Gragg* v. *Martin*, 12 Allen, 498.    In the present case, the father, in good faith, consented that his minor daughter should receive to her own use, her future earnings in a certain employment.    His creditors cannot interpose to take from the daughter wages earned by her in that employment subsequently to the father's relinquishment of his right.    See *Wolcott* v. *Rickey*, 22 Iowa. 171 ; *McCloskey* v. *Cyphert*, 27 Penn. 220 ; *Lyon* v. *Bolling*, 14 Ala. 753 ; *Bobo* v. *Bryson*, 21 Ark. 387 ; *Lord* v. *Poor*, 10 Shepley, 569 ; *Bray* v. *Wheeler*, 29 Vt. 514 ; *Manchester* v. *Smith*, 12 Pick. 113 ; *Whiting* v. *Earle*, 3 Pick. 201 ; *Jenney* v. *Alden*, 12 Mass. 375.

It seems to have been asserted, that a *bona fide* relinquishment by a husband to his wife, of his marital right to the wife's future earnings, is invalid as against the husband's creditors.    See 2 Story's Equity Jur. sec. 1387.    If the reason of such a doctrine is found in the common law disability of a husband to contract with his wife, it can have no application to the present case.    If the doctrine can be sustained at all, it must be as an exception, growing out of the

peculiar *status* of the parties; and not as a rule based upon general principles, applicable alike to husband and wife, and parent and child.

The right of the daughter, to hold the twenty dollars against her father's creditors, does not depend on the question whether she had fully emancipated, or had ceased to receive any support from her father. If she performed the labor, by which that sum was earned, upon an understanding with her father that she should receive the avails of that labor, that understanding cannot be treated as a nullity, merely, because it did not extend to all other labor which the daughter might perform during minority. A partial relinquishment of the parental right avails *pro tanto* : See *Tillotson* v. *McCrillis*, 11 Vt. 477, p. 480. Notwithstanding the decision in *Godfrey* v. *Hays*, 6 Ala. 501, we think that the fact that the daughter remained a member of her father's family is material only as evidence to be weighed in determining whether the alleged relinquishment by the father was an act done in good faith, or merely colorable. In many instances where minors are allowed to control their own earnings, it may reasonably be expected, that they will support themselves out of those earnings, and thus diminish the claims on their parents. The probability of such a result, has had some weight in inducing courts to deny the right of creditors to take the fruits of the minor's labor. But we do not understand, that the use which the minor makes of his earnings, is the test of his right to those earnings; nor that the continuing liability of the father to support the minor is fatal to the minor's claim to control his own earnings. If it were otherwise, no emancipation by the father could could ever be of any validity against his creditors; for it is clear that a father cannot, by his own act, "cast his son upon the public, and relieve himself from the obligation of maintenance" imposed upon him by the pauper laws (see Gen. Stat. ch. 74, sec. 8.)    The usual clause in "freedom notices," in which the father declares that he will pay none of the son's debts, can hardly have the full effect which many fathers may imagine; see Bell, C. J., in *Hall* v. *Hall*, 44 N. H. 293 pp. 295, 296; 1 Parsons on Contracts, 5th edition, 310, 311. The continued receipt by the minor of support from his father is competent evidence upon the question, whether the father's alleged relinquishment of his right to any portion of the minor's future earnings, was a reality or a mere sham; and it is not difficult to imagine cases where such evidence would carry decisive conviction of the colorable nature of the alleged relinquishment. But proof of this fact, does not give rise to a conclusive legal presumption of fraud. In the present case, it seems not improbable that the daughter's services as her father's housekeeper fully compensated him for her support.

We find, that his consent to her receipt of the money earned by sewing was given in good faith, and was not designed to cover up the daughter's earnings for the father's benefit in fraud of his creditors. It follows, that the plaintiffs, though assumed to be existing

creditors of the father, had no claim on the twenty dollars; and of course have no claim upon the property purchased therewith.

If we had held that the twenty dollars should be regarded as the father's money, it might have been necessary to inquire whether that sum was paid down at the time of purchase, or whether the machine was purchased wholly upon the daughter's credit and the sum of twenty dollars was afterwards applied by the daughter in part payment of her debt; see Adams on Equity, 143, 144; 1 Leading Cases in Equity, 3d Am. Ed. 275; *Francestown* v. *Deering*, 41 N. H. 438; 2 Story on Equity Jurisp., sec's 1258, 9; *Taylor* v. *Plumer*, 3 Maule & Selwyn, 562; 2 Kent's Com. 623.

*Caswell* v. *Hill*, 47 N. H. 407, is not directly in point. There, the court found, as matter of fact, that the transaction relative to the musical instrument was, really, "nothing more nor less than a gift of this instrument" by a step-father to his step-daughter; and the gift was of course held invalid as against his existing creditors.

*Trustee discharged.*