## WILSON *vs.* McMILLAN.

[WARNER, Chief Justice, was providentially prevented from presiding in this case ]

1. A father, though insolvent, may consent to his minor child's receiving the proceeds of its own labor A *bona fide* hiring of the child by the father to aid in making a crop, is one mode of giving such consent. The good faith of the transaction is a question for the tribunal trying this fact. A reasonable part of the prospective crop, in a fair and honest contract, may be promised the child, at the time of the hiring, as compensation, and such part will not be liable to the father's debts.

2. The evidence was not such as to force a finding of fraud.

Parent and child. Contracts. Levy and sale. New trial. Before Judge RICE. Gwinnett Superior Court. March Term, 1878.

An execution from the justice court of the 407th district, G. M., in favor of Wilson & Hamilton, proceeding for the use of William H. Wilson, against George McMillan, was levied upon one bale of cotton as the property of the defendant. A claim thereto was interposed by Louisa McMillan, a minor daughter of the defendant. Upon the issue thus formed, there was evidence to show that claimant worked for the defendant during the year 1876, the year the cotton in controversy was made, under an agreement that she was to have all the cotton made, five acres being afterwards planted; that by reason of this contract she obtained credit with a certain merchant; that defendant recognized this agreement by having purchases from the merchant for himself and family charged to her; that two bales of cotton were made on the five acres, one of which had been disposed of by the defendant; that defendant was insolvent; that other crops were made on the place besides the cotton.

The justice rendered judgment for the claimant; whereupon the plaintiff applied for the writ of *certiorari*, attacking the aforesaid judgment upon the following grounds:

1. Because the evidence showed that the arrangement between defendant and his daughter was a fraud upon his creditors.

2. Because, whilst a parent may consent to a minor's receiving the proceeds of her own labor, still, if such consent be made to defraud creditors, it is void as against them.

3. Because the evidence showed that defendant, under such arrangement and with claimant's consent, had used the cotton and the credit extended to claimant, wholly for his own benefit.

4. Because the judgment is contrary to law and evidence.

The writ of *certiorari* issued, but on the hearing in the superior court the judgment of the justice was sustained. To this plaintiff excepted.

WINN & SIMMONS, for plaintiff in error, cited Code, §§1793, 1952.

N. L. HUTCHINS, for defendant, cited the same sections of the Code and 1 Par. on Con., 310.

BLECKLEY, Justice.

The record discloses that the daughter was a minor, but does not give her exact age. It shows that the father and daughter made a contract in the commencement of the year 1876, by which it was agreed that she was to receive for her labor in the crop of that year all the cotton that might be produced; that she worked on the father's farm with him and helped to cultivate it; that the area planted in corn was thirteen or fourteen acres, and that planted in cotton was five acres; that two bales of cotton were produced; that one of these was sold by him, the proceeds of which he kept, and the other was levied upon by virtue of a judgment against him, rendered in the previous year, that is, the year 1875; that on the faith of her contract with her father, she opened an account with a merchant, and from time to time, between January and October, purchased supplies and merchandise, some for herself and some for the family, expecting and promising to make payment out of the cotton or its proceeds; that if the cotton should be sold away from her this debt would be left unpaid and unprovided for; that the contract between her and her father was brought about by a threat on her part to leave him, as the other children had done; and that to the bale of cotton levied upon as above mentioned she interposed her claim, which claim was decided by the presiding justice of the peace in her favor.

1. In section 1792, the Code declares, "until majority, the child remains under the control of the father, who is entitled to his services and the proceeds of his labor." The same section provides that this parental power is lost, "by his consent to the child's receiving the proceeds of his own

labor, which consent shall be revocable at any time." Other modes of losing it are enumerated, but they are irrelevant. In his excellent work on *Master and Servant*, §25, Mr. Wood says, "It seems that emancipation may be implied even when the minor resides at home and works for his father, from a promise on the part of the father to pay him for his services during his minority, so that the minor may maintain an action against the father even for such services." 44 N. H., 293 ; 12 Mass., 377 ; 5 Eng., 211. No doubt the agreement would have to be clearly established. 64 Pa. St., 480. As to the rights of the father's creditors, they would seem to be no more absolute over the prospective labor of the child than over that of the father himself. Certainly a debtor may work gratuitously for whom he pleases, and his creditor cannot oblige him to exact wages. While a debtor cannot give away his property to the prejudice of his creditors, he may give away his labor. So, too, may he give away his minor child's labor, either to the child itself or to another. A father is not bound to claim the earnings of his child, and appropriate them to his creditors. 3 Casey, 220. Of course he cannot take the earnings in fact, and cover them up against the claim of his creditors by a mere colorable arrangement with the child. But it is not apparent why a *bona fide* hiring of the child by him before the labor is performed, is not as valid a mode of waiving parental right as any other. The good faith of the transaction is open to scrutiny, and is for decision by the tribunal trying the fact. A reasonable part of the prospective crop, in a fair and honest contract, may be promised the child at the time of the hiring, as compensation ; and such part, when it comes into existence, will be the property of the child, and not liable to seizure to satisfy the father's debts. In the present case, the judgment was older than the contract of hiring, but as the hiring took place before the crop was planted, and therefore before the judgment lien could attach, and as there is no certainty that, but for the contract and the labor done in pursuance of it, the cotton levied upon

would ever have been produced, we think the date of the judgment makes no difference. When a laborer hired to plant and cultivate a crop is to receive a definite part of the crop as wages, as all the cotton, or all the corn, the hirer never has any real, substantial ownership of such part as against the laborer, provided the contract of labor is fully and faithfully performed. Grant that the father could have defeated the daughter's right by revoking his consent as given in the contract of hiring, still, he did not in point of fact revoke his consent as to the one bale levied upon, if he did as to the other. His creditor could not revoke for him, and without revocation the daughter's would be and remain the superior right.

2. Fraud, indeed, would break up the daughter's title, but the magistrate, we may assume, found no fraud; and the evidence is not such as to force him to find fraud.

Judgment affirmed.