## Biggs *v.* St. Louis, Iron Mountain & Southern Railway Company.

### Opinion delivered June 21, 1909.

1. Parent and child—right of parent to child's wages.—As a general rule, a father is entitled to the services and earnings of his minor child; and upon the father's death the mother is entitled to receive such services and earnings. (Page 125.)

2. Same—emancipation.—A parent's relinquishment of his right to the earnings of his minor son may be either express or implied from circumstances, as where the parent allows the child to make his own contracts and to collect and retain his earnings. (Page 125.)

3. Same—emancipation—revocation.—Where a parent has relinquished his right to the earnings of his minor child, the right of action to recover such wages is in the child, and not in the parent; and such right of the child continues until it is revoked. (Page 125.)

4. Same—revocation of emancipation—wages already earned.—Where a parent has permitted his minor child to contract for himself and to receive his wages, he cannot, by revoking this license, acquire rights in wages already earned by the child. (Page 125.)

5. Same—effect of emancipation.—When a mother has emancipated her minor child, payment of the child's wages to the mother will be no defense to a suit by the child to recover such wages, though the mother is named in the suit as the next friend of the child. (Page 126.)

6. Master and servant—nonpayment of wages—penalty.—Where, at the time a servant was discharged by a railway company, his foreman notified him that his money would be sent to a station named where a regular agent was kept, to which the servant acquiesced, this was equivalent to a request by the servant to have the money due him sent to the station, and sufficient to entitle him to recover the statutory penalty for failure to send the money. (Page 127.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; reversed.

*Huddleston & Taylor,* for appellant.

1. A minor may lawfully receive and enjoy his own wages if his parent sees fit to permit him to make his own contracts, and to appropriate the wages to his own use. Whether or not the parent has manumitted the child may be shown by facts and circumstances from which arises the necessary inference. Rodgers on Dom. Rel., § 485; 53 Ark. 499; 33 Ark. 435; 21 Ark. 387. That Sallie Biggs instituted this suit as next friend is of

itself a waiver on her part of her right to her son's wages.  66 Ark. 409.

2.  A guardian or next friend has no authority to compromise or settle the suit except by leave of the court, neither can he compromise a judgment in favor of the infant.  22 Cyc. 663, 670; 27 N. E. 890; 13 S. W. (Tex.) 567; 22 Cyc. 661; 29 N. E. 208; 13 S. E. 59; *Id.* 602.

*E. B. Kinsworthy, S. D. Campbell* and *F. R. Suits,* for appellee.

1.  Sammy Biggs did not name any station and request that his pay, or valid check therefor, be sent there for him.  He cannot recover the penalty.  87 Ark. 132; *Id.* 574; 88 Ark. 277.

2.  The emancipation, if any, was without consideration, and was revocable, at the will of the mother, at any time during his minority.  77 Ark. 35; 80 Ark. 525.

FRAUENTHAL, J.  The plaintiff, Sammy Biggs, by his next friend, Sallie Biggs, instituted this suit against the defendant, the St. Louis, Iron Mountain & Southern Railway Company, before a justice of the peace, for the recovery of his wages as an employee of said railroad company and for penalty for the nonpayment thereof.  On November 6, 1907, a judgment was rendered by the justice of the peace in favor of the plaintiff for the sum of $108.25.  From this judgment an appeal was taken by the defendant to the circuit court.  Upon a trial before a jury in the circuit court the evidence tended to establish the following facts:

Sammy Biggs was a minor about 16 years old.  His father was dead, and he was living with his mother, Sallie Biggs, upon a small farm.  Through the farming season he worked on the farm for his mother, making his home with her, during which time she maintained him.  For a year or two prior to the time he worked for the defendant, when he was not engaged in farming, he worked out for other people, and made his own contracts for his services, and collected his wages, and retained all such earnings as his own property.  This was done with the knowledge of his mother; and, while he did not have her express consent in thus working out for himself for others, she did not

make any objection thereto. He had thus worked for himself under the employment of one of defendant's foremen named Hall for the two years next prior to his employment in this case, and he had worked under the foreman Hall for the defendant, and had collected his wages, and retained all such earnings as his own, with the knowledge of his mother and without any objection from her. On August 25, 1907, he was hired by I. A. Copple, one of defendant's foremen, and worked for the defendant for two or three days, when he was discharged. He demanded his wages, and his foreman gave him a written statement, called an "identification ticket," which set forth that Sammy Biggs had worked for defendant during the month of August, 1907, and the amount which as per the pay roll was due him. The amount thus due him was $3.50. At the time of giving him the identification ticket the foreman told him to go for the receipt of the money due him to the depot agent at Delaplaine, which was a station of defendant where a regular agent was kept. And the testimony tended to prove that Sammy Biggs agreed to receive his check or money at that station. Within seven days thereafter he applied to the regular agent at Delaplaine for the payment of his wages, but that official claimed that he had not received it. He applied a number of times to the agent thereafter for payment of his wages, but with like result. He then instituted this suit on October 25, 1907. On December 4, 1907, an attorney of the defendant went to see the mother of plaintiff and paid to her $5.10, and took from her the following receipt:

"My name is Sallie Biggs. I am the mother of Sam Biggs, who is 15 years old. His father is dead, and he has no guardian but me. I have this day received from St. Louis, Iron Mountain & Southern Railway Company five dollars and ten cents in full for wages and interest on same due my son from the railway, about which there is a lawsuit in John Tate's J. P. court. December 4, 1907.                                 her

                                              "Sallie  X  Biggs.
 "Witness to mark :                             mark
     "Fred R. Suits."

In addition to the above, the defendant, prior to the day of the trial in the circuit court, paid to the constable the costs of the case in the court of the justice of the peace.

The court thereupon directed the jury to return a verdict in favor of the defendant, which was done. The plaintiff prosecutes this appeal from that judgment.

It is contended by the defendant that, inasmuch as Sammy Biggs was a minor, his wages belonged to his mother, and that it had paid to her the amount of such wages as evidenced by said receipt; and that therefore there was nothing due for said wages at the time of said trial in the circuit court. It is true that, as a general rule, the father is entitled to the services and earnings of his minor child; and that the widowed mother is entitled to these services and earnings to the same extent as the father. That is founded on the universal right of the parent to the custody and control of the child and his duty of maintenance and education of the minor child. But the parent may permit his minor child to make his own contract and to receive and own his wages. The parent has the right to give to his infant son his time and the fruits of his labor, and in such case the minor is under the law entitled to such earnings. The parent may relinquish his right to the services and earnings of the child expressly; but this relinquishment may also be implied from the circumstances. And this relinquishment may be found to have been made where the parent allows the child to make his own contracts and to collect and retain his earnings. *Bobo* v. *Bryson,* 21 Ark. 387; *Fairhurst* v. *Lewis,* 23 Ark. 435; *Vance* v. *Calhoun,* 77 Ark. 35; *Smith* v. *Gilbert,* 80 Ark. 525; *Kansas City, P. & G. Ry. Co.* v. *Moon,* 66 Ark. 409; Rodgers on Domestic Relations, § 485; 29 Cyc. 1626; *Dierker* v. *Hess,* 54 Mo. 246.

And where the parent has thus relinquished his right to the earnings of the minor, the right of action to recover such wages is in the child, and not in the parent; and such right of the child continues until it is revoked. This relinquishment by the parent of the minor's services and earnings may be revoked by the parent. *Vance* v. *Calhoun,* 77 Ark. 35; Rodgers on Domestic Relations, § 485; 29 Cyc. 1627.

But where the parent has permitted the child to contract for himself and to receive his wages, he cannot revoke this license after the wages have been earned, so as to acquire rights in the wages already earned. Under such circumstances, the parent is precluded from asserting a claim to such wages. Rodgers on

Domestic Relations, § 487; *Torrens* v. *Campbell,* 74 Pa. St. 470; *Campbell* v. *Campbell,* 11 N. J. Eq. 268.

In the case of *Tennessee Mfg. Co.* v. *James,* 91 Tenn. 154, Lurton, J., says: "The father may permit the minor to take and use his own earnings. This is called emancipation, and emancipation will be a defense to the father's suit for the minor's wages. It may be express or implied; * * * * * for the whole minority, or for a shorter term. * * * * Emancipation will not enlarge the minor's capacity to contract; it simply precludes the father from asserting his claim to the wages of his child. If one employ a minor with notice of the non-emancipation of the infant, it will be no defense to the father's suit for the wages that the child has received them. On the other hand, payment to the father will be no defense to the minor's suit, if the employer knew of the fact of emancipation." See also note to case of *Wilson* v. *McMillan,* 35 Am. Rep. 117.

In the case at bar we are of the opinion that there was sufficient evidence to go to the jury for that body to pass on the question as to whether the parent in this case had given to the minor son the right to make this contract for his labor and collect and appropriate to his own use the earnings arising from such labor. If she did, then the son had a right to enter suit therefor, and the mother could not then revoke her license to him to have such earnings, so as to collect the same herself and deprive him of the right to recover them. In this case the mother consented to and did act as next friend for the minor, and did as such next friend enter suit for the wages in the name of and for the benefit of the minor, and thus recognized his right to recover same for himself. The defendant had knowledge of this by the institution of this suit and the recovery of the judgment before the justice of the peace. After this judgment was thus recovered, the defendant, with this knowledge, made payment to the parent, and thereafter pleads such payment against the suit of the minor. If Mrs. Sallie Biggs had emancipated her son to make the contract for the wages and to collect same, she had no right thereafter to revoke that license as to these earnings and collect them. And, under such circumstances, a payment by defendant to her would not be a defense to this suit.

Mrs. Sallie Biggs as next friend instituted this suit for the minor. As such next friend, she had no authority either to compromise this case or to receive any money belonging to the minor. The minor had recovered judgment against the defendant for $108.25, and she received therefor $5.10. She could not as next friend defeat the minor by any such compromise or settlement. Her only and entire authority as next friend was to prosecute the suit, and in the progress of the case she could take no action that would be binding on the minor except with the consent of the court. In this case she appears to have made receipt in her own name and right, and not as next friend; but if the receipt could be considered as made by her as next friend, it would not be a defense to this action. *Evans* v. *Davies*, 39 Ark. 235; *Rankin* v. *Schofield*, 70 Ark. 83; *Wood* v. *Claiborne*, 82 Ark. 514; 22 Cyc. 661-663.

It is next urged by the defendant that the plaintiff did not request his foreman or the keeper of his time to have the money due him or a valid check therefor sent to a station named by him where a regular agent was kept; and for that reason is not entitled to any penalty. This suit for penalty was brought under the act of the General Assembly of Arkansas, approved April 24, 1905, and which amends section 6649 of Kirby's Digest. Acts 1905, p. 538. That act makes the above request or notice necessary to a recovery of a penalty. *Wisconsin & Ark. Lbr. Co.* v. *Reaves*, 82 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Bailey*, 87 Ark. 132; *St. Louis, I. M. & S. Ry. Co.* v. *McClerkin*, 88 Ark. 277.

But the evidence in this case tended to prove that the foreman at the time of the discharge told the plaintiff that the money due him would be sent to the depot agent at Delaplaine, and that the plaintiff agreed to that place for receiving payment. This was equivalent to a request on the part of plaintiff to have the money due him sent to that station.

The above questions were controverted questions of fact, and were within the province of the jury to determine.

Under proper instructions there was sufficient evidence adduced in this case to sustain a verdict of the jury in favor of the plaintiff, should such a verdict have been returned.

The court therefore erred in directing a peremptory verdict in favor of the defendant.

The judgment is reversed; and the cause remanded for a new trial.