FRAUENTHAL & SCHWARZ *v*. BANK OF EL PASO.

Opinion delivered February 1, 1926.

1.  PARENT AND CHILD—EMANCIPATION OF CHILD.—While it is the general rule that a father is legally entitled to the services of his minor child, it is equally well settled that he may voluntarily relinquish the right to his child's earnings and may permit the child to receive and appropriate his earnings at pleasure; and where the father has emancipated his child, he is under no legal obligation, although he be insolvent, to claim such earnings for the benefit of his creditors.

2.  MORTGAGES—TITLE TO CROP RAISED BY MORTGAGOR'S MINOR SON.— Where a mortgagor conveyed all the crop to be grown by him on his farm for the year 1923, and warranted that no member of his family should have any claim or lien on such crop, the effect of the mortgage was to embrace the crops grown by the mortgagor or any member of his family, and the mortgagor could not thereafter, as against the mortgagee, emancipate his minor son, while a member of his family, and rent to him any part of the farm, so as to give the son a title superior to that of the mortgagee.

3.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— The finding of the chancellor that the mortgagee did not consent to the emancipation of the mortgagor's son, so as to release the son's crop from the mortgage, *held* not against the preponderance of the evidence.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT OF FACTS.

The Bank of El Paso brought this suit in equity against J. E. Baxter, Rose Baxter, his wife, and Frauenthal & Schwarz to recover a personal judgment against J. E. Baxter on a promissory note in the sum of $797.74, with the accrued interest, and to foreclose a mortgage on real estate and on personal property given to it by said Baxter to secure said indebtedness, and judgment against Frauenthal & Schwarz for $150, the alleged value of a bale of cotton purchased by them and covered by the personal property mortgage above referred to.

Judgment was rendered against J. E. Baxter for the amount sued for, and a decree of foreclosure of the real and personal property mortgaged was entered of

record. No appeal was taken from the decree in this respect.

On the branch of the case against Frauenthal & Schwarz, R. A. Kent, cashier of the Bank of El Paso, was the principal witness for it. According to his testimony, on the 25th of November, 1922, J. E. Baxter executed to the Bank of El Paso, to secure a past indebtedness due it, and for supplies to be furnished him during the year 1923, a chattel mortgage on certain personal property consisting of mules, cows, two wagons, plow tools, and all the crop of cotton which should be grown and cultivated by J. E. Baxter, including all rents and share crops which he might have interest in on his farm and elsewhere in White County, Arkansas, during the year 1923. This mortgage contained a clause as follows:

"And the party of the first part does hereby warrant and guarantee to the party of the second part that no member of the family of the party of the first part nor any other person has any interest whatsoever in any of the above described property, and that no member of the family of the party of the first part has nor will have any claim or lien on or against any of the above described crop or property, for labor or otherwise."

Frauenthal & Schwarz got one bale of cotton raised by J. E. Baxter in 1923, in White County, Arkansas, and the cotton was worth $130.35.

E. L. Baxter, a son of J. E. Baxter, nineteen years old, was a witness for the defendants. According to his testimony, the bale of cotton in question weighed 395 pounds, and was sold by him to Frauenthal & Schwarz in payment of a debt he owed them. He had bought a buggy from Frauenthal & Schwarz, and gave them a mortgage on his crop for the purchase price. When he gathered the bale of cotton in question, he turned it over to them. The witness did not have any land rented for that year, but, in the spring of 1923, he made an agreement with his father and brother and Mr. Kent that he was to make and help gather his father's crop and have

for his services the cotton grown on ten acres of the land. His father had about forty acres planted in cotton that year. This agreement was before the cotton crop was planted.

According to the testimony of J. E. Baxter, his son E. L. Baxter had been working for himself since he was sixteen years old. The father had emancipated both of his boys, and they had been working for other people. The witness had somewhere around forty or fifty acres in cotton, and was not able to secure help to work all of it. R. A. Kent, for the Bank of El Paso, agreed that the witness might hire his son, E. L. Baxter, to help work and gather the crop, and in payment of his services give him the cotton grown on ten acres. The witness was to feed his son, and his son to clothe himself. Pursuant to this agreement, E. L. Baxter worked in the crop all of the season and helped to make and gather it. The bale of cotton sold by E. L. Baxter was grown on the ten acres set apart to him in payment for his services in making and gathering the crop. All of the crop grown on the remaining part of the land was turned over to the Bank of El Paso and applied toward the discharge of the indebtedness of J. E. Baxter. Henry Baxter, another son of J. E. Baxter, corroborated in every respect the testimony of his father and brother.

R. A. Kent denied having entered into an agreement whereby E. L. Baxter was hired to help make and gather the crop grown by his father, J. E. Baxter, and denied having released the mortgage of the Bank of El Paso on any part of the crop grown by J. E. Baxter in White County during the year 1923.

It was also shown that E. L. Baxter carried the cotton from the farm of J. E. Baxter in the night time and sold it to Frauenthal & Schwarz the next day.

The chancellor found the issues on this branch of the case in favor of the plaintiff, and it was adjudged that the Bank of El Paso recover from the defendants, Frauenthal & Schwarz, the sum of $130.35. To reverse

this part of the decree, Frauenthal & Schwarz have only prosecuted an appeal to this court.

*R. W. Robins,* for appellants.

*Brundidge & Neelly,* for appellee.

HART, J., (after stating the facts). A father can make a valid gift of his minor son's services to himself so as to be beyond reach of his father's creditors. *Bobo v. Bryson,* 21 Ark. 387; *Fairhurst v. Lewis,* 23 Ark. 435; *Vance v. Calhoun,* 77 Ark. 35; and *Biggs v. St. L. I. M. & So. Ry. Co.* 91 Ark. 122. An insolvent father may emancipate his minor child, even as against his creditors, and although the child remains at home and is hired by the father. 20 R. C. L., pp. 610 and 611; *Wilson v. McMillan,* 62 Ga. 16, 35 Am. Rep. 114, and case note at p. 117; *McCloskey v. Cyphert,* 27 Penn. St. Rep. 220; *Beaver v. Bare,* 104 Penn. St. 58, 49 Am. Rep. 567 and cases cited; *Wright v. Dean,* 79 Ind. 407; *Hall v. Hall,* 44 N. H. 293; *McDaniel v. Parish,* 4 App. Cas. D. C. p. 213.

While the general rule is that a father is legally entitled to the services of his minor child, it is equally well settled that a parent may voluntarily relinquish the right to his child's earnings and may permit the child to receive and appropriate his earnings at pleasure. Where the father has emancipated his child, he is under no legal obligation, although he be insolvent, to claim such earnings for the benefit of his creditors. Therefore, the father may himself contract to employ and pay the child for his services and be bound in consequence like any stranger to fulfill his agreement.

But it is claimed that this principle has no application to the facts in the case at bar, because the cotton in question was covered by the mortgage given by the father to the Bank of El Paso. While this is true, the bank had a right to release or waive its mortgage on a part of the crop, and this is what the defendants claim was done. The father claims that he was unable to secure labor with which to make and cultivate a cotton crop on the whole forty acres, and the bank agreed that he might hire his

minor son to help make and gather the crop and pay him for his services the cotton grown on ten acres of the land. The parties had a right to make this agreement, even though the father had covenanted in the mortgage that no member of his family might have any claim or lien against any part of the crop or other personal property described in the mortgage. Under the authorities cited it is settled that the father might hire his minor son just as he might employ any other person to help make and gather the crop. The fact that E. L. Baxter was the minor son of J. E. Baxter was a circumstance tending to show fraud or collusion in the matter. Fraud may be established by circumstantial as well as by direct evidence, but it is not to be presumed. If the form and design of the transaction may be traced to an honest source, under a preponderance of the evidence, the transaction must be allowed to stand.

It is true that the cotton was carried away from the farm of J. E. Baxter in the night time, and this, coupled with the fact that E. L. Baxter was the minor son of J. E. Baxter, is a circumstance pointing to fraud and collusion. Suspicious circumstances, however, can not outweigh positive proof in the premises. The fact remains that J. E. Baxter and both of his sons testified that Kent agreed that E. L. Baxter should be given the cotton grown on ten acres of the crop in consideration of his help in making and gathering the crop. They testified that E. L. Baxter worked in the crop all the year and did most of the work in making and gathering it. Their testimony that E. L. Baxter did most of the work in making and gathering the crop is uncontradicted. Neither is their testimony contradicted as to the fact that J. E. Baxter could not get any one else to make the crop. It is a matter of common knowledge that J. E. Baxter himself could not work the whole forty acres in cotton in a husbandlike manner. It was necessary for him to have help from somewhere, and the undisputed facts show that his minor son did help him.

Upon a careful examination of all the facts of the case we have reached the conclusion that a preponderance of the evidence shows that the parties in good faith made an agreement that J. E. Baxter was to give his minor son, E. L. Baxter, the cotton grown on ten acres of the land in payment of his services in making and gathering the crop of cotton, and that Kent, as the representative of the Bank of El Paso, assented to this agreement. The proof shows that the cotton in question was grown on the ten acres allotted to E. L. Baxter as his part of the crop.

It follows that the decree will be reversed, and the cause remanded with directions to dismiss the complaint for want of equity.

### ON REHEARING.

HART, J. Upon further consideration of this case we are of the opinion that, under the terms of the mortgage, which guaranteed to the mortgagee that no member of the family of the mortgagor had or would have any interest or claim or lien on the property mortgaged, the mortgagor could not, as against the mortgagee, emancipate his minor son, at the same time retaining him as a member of his family and give him part of the crops embraced in the mortgage for his services in helping to raise them. Such is the effect of a decision of the Alabama Court of Appeals in *Hughes & Tidwell Supply Co.* v. *Bussey,* 70 So. 997.

In that case the mortgage embraced "the entire crop of cotton * * * raised or to be raised by us (the mortgagors) or our family, during the year 1912." In discussing a precisely similar case to the present one, the court said:

"As against the plaintiff, to whom the father had thus mortgaged, not only the product of his own labor that might materialize in crops grown on the mentioned premises during the year 1912, but also the product of the labor of his minor son that might so materialize in crops grown on said premises during said year, the father could not subsequently make a valid agreement

with the son whereby the crops resulting from the labor of the son on said premises during said year should become the son's property to the exclusion of the plaintiff, when it appears, as it does from the evidence here, that the son remained during the year a member of his father's family and was cared for as such and used his father's property in making the crop.''

It was urged that the holding was in conflict with a recent decision of the Supreme Court of Alabama in *Maybank* v. *Lumpkin,* 66 So. 584. In that case the court held that a father might, as against the mortgagee, emancipate his minor son after the execution of a mortgage and rent to him a part of the premises upon which the mortgaged crops were grown, so as to confer on the son, even as against the mortgagee, the title to that part of the crops the son might raise on the portion of the premises so rented to him. In that case, however, the mortgagor did not attempt to convey to the mortgagee the entire crop of his family.

In the case before us the effect of the mortgage was to embrace the crop grown by the mortgagor or any member of his family. Therefore it seems to us that the mortgagor could not, as against the mortgagee, emancipate his minor son, at the same time retaining him as a member of his family, and rent to him any part of the premises on which the crops mortgaged were to be grown, so as thereby to give the son a title superior to that of the motgagee to such part of the crops as the son might raise. It is admitted that the minor son in the case before us lived with his father as a member of his family, and it is also shown that the food which he ate was purchased by the money obtained by executing the mortgage. The father, under such circumstances, being obliged to support his minor child, would be entitled to his services and to the product of his labor so long as he remained a member of his family. If the father had not seen fit to mortgage any crop which his minor son might grow, we think that he might have emancipated him and

allowed him to work the crop in any way he might contract with any third person to do it.

In *Holst* v. *Harmon,* 26 So. 157, in an opinion rendered by Chief Justice McClellan, the Supreme Court of Alabama held that a mortgage embracing all the crops grown by the mortgagor, or under his direction, on his plantation, includes cotton grown by the mortgagor and his sister, who was a member of his family, and who subsisted on the supplies furnished by the mortgagee under the mortgage.

It is true that there was proof in the case at bar tending to show that subsequently the cashier of the bank agreed that the mortgagor might emancipate his son and make a contract with him to grow the crop, but this the cashier denies to be the case, and, when the terms of the mortgage to the contrary and the surrounding circumstances are considered, we do not think that the finding of the chancellor in favor of the mortgagee is against the preponderance of the evidence.

The result of our views is that a rehearing should be granted, and that the decree of the chancery court should be affirmed.