# Kling *v.* Tunstall.

## *Contest of Answer of Garnishee.*

1. *Evidence; what competent on contest of answer of garnishee.*—Where in a contest of the answer of a garnishee the issue was whether or not the garnishee had the right to retain certain money in his hands or it was subject to the garnishment, and it appeared that the money in question was the proceeds of the sale of certain property which was sold under a mortgage executed to the garnishee by the debtors of the plaintiff, and was the balance of such proceeds after payment of the mortgage debt and expenses; and it was sought to be proved that this balance was retained by the garnishee under an agreement with the mortgagors that the garnishee should bid at his mortgage sale an amount sufficient to pay the mortgage debt and certain open accounts, and retain out of the proceeds of the sale an amount sufficient to pay these accounts; and that the mortgagors were liable for these accounts to the garnishee and why so liable—the evidence thus sought to be made was competent, not being obnoxious to the statute of frauds, since that statute requiring certain contracts to be in writing applies to *executory* and not to *executed* contracts.

2. *When partner in new firm becomes bound for debts of old firm.*—Where an existing partnership is changed and a new firm created by the introduction of an additional partner, and as a part of the contract of partnership the new member agrees to be bound for the debts of the old firm; he becomes by that agreement subject to the same liabilities as if he had been a member of the old firm.

3. *Priviledged communications; what are not.*—The doctrine of priviledged communications between attorney and client has

[Kling v. Tunstall.]

no application where the attorney is called as a witness, either for or against his client, as to independent facts within the knowledge of the attorney and not obtained by him through confidential relations with the client.

APPEAL from Baldwin Circuit Court.
Tried before Hon. W. S. ANDERSON.
The facts are stated in the opinion.

J. N. MILLER and S. B. BROWN, for appellant.—Stat-ute of frauds apply to *executed*, not to *executory* con-tracts.—7 Ala. 161; 51 Ala. 434; 60 Ala. 214; 71 Ala. 202; 82 Ala. 622; 96 Ala. 515; 100 Ala. 430; 105 Ala. 585.

G. L. & H. T. SMITH, *contra*, cited *Kling v. Tunstall*, 109 Ala. 610; *Self v. Kirkland*, 24 Ala. 277.

DOWDELL, J.—The appellee Tunstall commenced his suit by attachment against D. M. Paxton and John C. Williams, Sr., as partners under the firm name of D. M. Paxton & Co., otherwise called the American Shingle Manufacturing Company. The attachment was exe-cuted by service of writ of garnishment on the appel-lant, A. Kling. The garnishee appeared and made answer denying indebtedness. The answer was duly and regularly contested. In making up the issue, it was agreed, as shown by the bill of exceptions, "that any matter that could come under plea of off-set by gar-nishee be received under the general issue."

It was shown in evidence by the plaintiff that he sold certain mill property at Pierce's Landing on the Ala-bama river to D. M. Paxton and John C. Williams, Sr., for $7,000. This was about 7th Feb., 1893, and at that time said Paxton and Williams borrowed $3,500 from the garnishee, and to secure him, they gave him a mort-gage on said mill property executed by John C. Wil-liams, Sr., and D. M. Paxton alone. That prior to said sale and mortgage D. M. Paxton & Co. did business oper-ating said mill. This firm was composed of D. M. Pax-ton, John C. Williams, Jr., and Henry Hall. After the date of said sale and mortgage of said mill property in February, 1893, John C. Williams, Sr., went into the

[Kling v. Tunstall.]

firm. That on default in payment of the mortgage debt to Kling said Kling duly and regularly foreclosed said mortgage on the 24th day of August, 1893, becoming the purchaser at the sale for and at the sum of $4,150.

It was admitted by the plaintiff upon the trial that the garnishee, Kling, was entitled to retain out of the purchase price so bid by him, the amount of his mortgage debt with interest, the cost of advertising sale, cost of watchman pending the foreclosure, and an attorney's fee in foreclosure proceeding, all of which amounted in the aggregate to $3,815.57. The balance $334.43, after deducting from the price bid the amount conceded by the plaintiff that garnishee had a right to retain, constituted the subject matter of the contest. It was also shown by plainiff that the balance due him by said Paxton and Williams on the purchase of said mill property was the sum of $541.65.

The bill of exceptions further recites that the "testimony tended to show, that D. M. Paxton & Co. composed as aforesaid, had an open running account with the garnishee of dates between the 6th of June, 1892, and Feb. 7th, 1893, which amounted to $350; that John C. Williams,.Sr., was not a member of that firm when this open account debt was contracted; that The American Shingle Manufacturing Company began business after the 7th of February, 1893, and was composed of D. M. Paxton, John C. Williams, Sr., John C. Williams, Jr., and Henry Hall; and that The American Shingle Manufacturing Co. contracted an open account with garnishee between dates of Feb. 7th, 1893, and July 1st, 1893; that both of said open account debts were due on the 24th of August, 1893. The amount of the account made by The American Shingle Manufacturing Co. with the garnishee is not stated.

The inference to be drawn from the evidence is, that the old firm of D. M. Paxton & Co. which was composed of D. M. Paxton, John C. Williams, Jr., and Henry Hall was changed to the new firm of The American Shingle Manufacturing Co. by the introduction of John C. Williams, Sr., into the firm; this, however, is not made definite and certain by the evidence. So far as the record discloses the ownership of the mill property remained

in John C. Williams, Sr., and D. M. Paxton after their purchase from the plaintiff Tunstall up to the foreclosure sale by the garnishee Kling.

The garnishee sought to prove by D. M. Paxton, who was examined as a witness, that John C. Williams, Sr., together with witness assumed the payment of the open account due garnishee by the old firm of D. M. Paxton & Co., and the consideration that moved to John C. Williams, Sr., to assume the debt, and when the assumption was made—whether or not at the time of the formation of the new firm of which said Williams Sr., was a member,—and also sought to prove by this witness that prior to and pending the advertisement of the mortgage sale that John C. Williams, Sr., and witness authorized and requested him, garnishee, at his said mortgage sale to bid an amount sufficient to cover in whole or in part, not only his mortgage debt and expenses of sale, but the two accounts due him by Paxton & Co. and the American Shingle Manufacturing Co. and to retain the amount so bid to pay what was truly due on said accounts and pay balance to witness and said John C. Williams, Sr. On the plaintiff's objection to this evidence upon the grounds that the same was illegal and obnoxious to the statute of frauds, the court refused to let the proof be made, to which ruling the garnishee excepted.

When this case was here on the former appeal (*Kling v. Tunstall*, 109 Ala. 608), it was said then in effect by this court, speaking through Head, J., that if the assumption of the debt of the old firm by the new firm was a part of its contract of partnership then it would be binding, and we now think that there can be no doubt of the soundness of the proposition. It was, also, then declared in effect, "that if the garnishee and *all* of the owners of the mortgaged property, pending the foreclosure, entered into an agreement by which the garnishee should bid enough for the property to pay the mortgage debt and expenses, and these open accounts, or either of them, and retain for the same, and the garnishee, accordingly, made the purchase, the agreement would have been valid, and authorized the retainer." In the present appeal the record discloses that John C. Williams, Sr., and D. M. Paxton were *all* the owners of the mortgaged

property, and the proof sought to be made was to show that they requested and authorized the garnishee to make the bid and retain to cover the open accounts due him. Paxton was a member of both firms, and was consequently individually as well as jointly liable on both accounts due the garnishee. John C. Williams, Sr., was individually as well as jointly liable on the account of the new firm, being a member of that firm, and as to the account of the old firm, if it was a part of the contract of the new firm in its formation to assume this debt of the old, the extent of his liability would be the same as if he had been a member of the old firm. The evidence sought to be developed by the questions asked by the garnishee was along this line and was competent. The statute of frauds requiring certain contracts to be in writing applies to *executory* and not *executed* contracts. *Rake's Admr. v. Pope*, 7 Ala. 161; *Rhodes' Admr. v. Storr*, Ib. 346; *Gafford v. Stearns*, 51 Ala. 434; *Lavender v. Hall*, 60 Ala. 214; *Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 202.

If the garnishee purchased in accordance with an agreement previously entered into by him with the owners of the property, the contract or agreement thereby became executed, and the statute of frauds would have no application.

The doctrine of privileged communications between attorney and client has no application where the attorney is called as a witness either for or against the client as to independent facts within the knowledge of the attorney, and not obtained by him through his confidential relations with the client. There was no error in requiring the attorney to testify as to what the client stated as a witness when examined upon a former trial.

For the error in refusing to allow the garnishee to make the proof sought by his questions to the witness Paxton as indicated above, the judgment of the circuit court must be reversed.

Reversed and remanded.