# Murphey *v.* Farmers Union Warehouse Company.

## *Trover and Conversion.*

(Decided May 9, 1912.   58 South. 667.)

*Chattel Mortgages; Priority; Gift.*—As against a mere debt, a father may emancipate his two minor sons and give them in good faith for their labor the crops raised on certain lands, although they continue to live with him, but he could not give them title to such crop superior to a mortgage which he had already given for supplies furnished the family while the crop was being grown.

APPEAL from Monroe Law and Equity Court.

Heard before Hon. M. R. SOWELL, Special Judge.

Action by the Farmer's Union Warehouse Company against Thomas J. Murphy. From a judgment for plaintiff, defendant appeals. Affirmed.

The plaintiff claimed under a mortgage executed by J. B. Morris to it, conveying all his crops grown on the Carter old place during that year, together with other personal property. The defendant justified under a mortgage executed by the sons of J. B. Morris to W. M. Fountain, who sold the cotton to the defendant. It appears that J. B. Morris also signed the note and mortgage to Fountain. The other facts sufficiently appear in the opinion.

BARNETT & BUGGS, for appellant. Under the evidence as shown by this case a minor may give a mortgage for supplies on his ungathered or unplanted crop.—*Hooper v. Payne*, 94 Ala. 223; 148 Ala. 286. The court erred in giving the affirmative charge.—*Bates v. Hart*, 124 Ala. 427; 2 Mayf. 561.

HYBART & HARE, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—We take it that under the laws of this state the emancipation of the son from the father's control may be as perfect when they both live together under the same roof as when they live separate from each other.—*Donegan v. Davis*, 66 Ala. 362. While a father, during the minority of his children, is entitled to their earnings, they are not his slaves, and the creditors of the father have no legal right to complain if the father, acting in good faith, emancipates them. The creditors, therefore, of the father have not, simply because the father is indebted to them, any claim upon or right to subject to their indebtedness the earnings of a child who has, in good faith, been emancipated.

In the present case, the appellee took a mortgage from J. B. Morris on February 10, 1911, on his crop to be grown by him during that year in Monroe county, to secure a note for $300 due October 1, 1911, and for any other "debt due or advances received" by the said Morris during that year from appellee. This mortgage was duly recorded in Monroe county on February 13, 1911. On the 25th of May, 1911, the said J. B. Morris and his two minor sons, J. Bonner Morris and Willie S. Morris executed and delivered to W. M. Fountain a mortgage to secure a note of $75 on "one top buggy made by the Ames Buggy Company and four acres of cotton growing on the Carter old place," and said mortgage was also duly recorded in Monroe county on May 27, 1911.

J. B. Morris, the father, rented the "Carter old place," and when he made the mortgage to appellee, that mortgage covered, of course, all of the cotton which was to be raised by said Morris or his servants during the year 1911 on said "Carter old place." The mortgage, of course, conveyed the legal title to the cotton so raised on said place in 1911 to the appellee.

There is evidence in the bill of exceptions tending to show that J. B. Morris, the father, when the crops were planted, agreed with his said two minor sons, J. Bonner Morris and Willie S. Morris, that a certain 4-acre tract of land on said "Carter old place" so rented by him should, if they would work it, be *their* cotton, and that he should have no right in or title to the cotton so raised by them on said four acres; in other words, that they should have that cotton for their labor in planting, working, and gathering it. The evidence further tends to show that the mortgage to Fountain above referred to was given to said Fountain on the cotton then growing on said four acres.

It further appears that, shortly before the bringing of this suit, the said Fountain received two bales of cotton which were raised on said "Carter old place" and sold the same to appellant and applied the proceeds to the payment of his said mortgage. There was *some* evidence —stating the case most strongly in favor of the appellant—that the two bales of cotton were raised on said four acres and that Fountain received the cotton and sold it as cotton raised on said four acres of said J. B. Morris, with his knowledge and consent and with the knowledge and consent of his two minor sons; in other words that the father and the sons delivered the cotton to Fountain for the purpose of satisfying the mortgage which they had made to Fountain.

While, as we have above stated, a father may make an agreement with a minor child that such child shall have the proceeds of his labor, and while such agreement is, if made in good faith, binding both upon the father and upon his creditors, unless the father revokes the agreement before the proceeds of such child's labor is disposed of by him (see *Hooper v. Payne,* 94 Ala. 223; 10 South. 431), we do not think that this rule has any applicability to the facts of this case. In this case the father made a mortgage in the early part of the year which conveyed the legal title to the crop to be grown by him or his servants that year on the "Carter old place." The appellee furnished to the father the supplies needed by him and the members of his family to enable them to live while he made the crop. The sons lived in the same house with the father, ate with him at the same table—supplied, in all probability, in large part with articles of food furnished by appellee under its mortgage— and were members of his family. If these sons had been hired servants, and the crops grown on the four acres of land had constituted in part

[Murphey v. Farmers Union Warehouse Company.]

their wages, it could not be successfully contended that the claims of such hired servants would not, under the law, be subordinate to the legal title which appellee's mortgage gave it to the crop so grown. While the sons were not hired servants, they were, in, law, the servants of their father; and while he, as against a mere debt, had the right to give to them, if acting in good faith, the proceeds of their labor, he had no right to give to them—and the law will not permit him to give to them under the circumstances under which the cotton in this case is shown to have been grown—crops upon which he had already given to appellee the mortgage which was introduced in evidence, and which conveyed the legal title to the crops to appellee. Every word said by Mr. Justice Stone in the opinion which he delivered for the Supreme Court in *Hooper v. Payne*, 94 Ala. 223, 10 South. 431, is, in our opinion, as applied to the facts of that case, the law. We feel confident that, under the facts in this case, and under the principles announced by him in the above case, that great jurist—whose opinions seem, like fine wine, to increase in value and in strength as they increase in years—would have unhesitatingly arrived at the same conclusions as those to which we have come, and which are, in truth, based upon his reasoning in *Hooper v. Payne, supra,* and the reasoning of the court in *Stovall v. Johnson,* 17 Ala. 14,, which is cited with approval in *Hooper v. Payne, supra.*

Under all the evidence, considered in the most favorable light in which it can be considered for appellant, the appellee in this case was entitled to recover.

There is no error in the record, and the judgment of the court below is affirmed.

Affirmed.