# Hood & Johnson *v.* Sitz & Co.

## *Case.*

(Decided June 19, 1912.   59 South. 767.)

1. *Parent and Child; Emancipation; Mortgage.*—In the absence of emancipation of the children, a widow was entitled to the crops grown on the land by herself and children, where, after her husband's death, she lived with her children on the homestead and cultivated the same, no dower having been assigned or homestead set apart to her; hence, her minor son had no authority to mortgage the crop to secure payment for a mule purchased and used on the farm.

2. *Same; Right to Service.*—Although a widow had emancipated her minor son and a separate crop had been grown by him, in the absence of an estoppel, the widow was entitled, at any time, before the crop was delivered by him to the purchaser to revoke her act of emancipation, and to claim the crop and the proceeds as her own.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Hood & Johnson against Sitz & Company in case for the destruction of a lien upon three bales of cotton. Judgment for defendant and plaintiff appeals. Affirmed.

GEORGE D. MOTLEY, for appellant. The homestead inures jointly to the widow and minor, and the minor is equally interested with his mother in the crop.— Section 4196, et seq., Code 1907. Under the facts in this case, a minor could mortgage his part of the crop for supplies.—*Hooper v. Payne,* 94 Ala. 223. The defense of infancy is personal.—*Riley v. Dillon,* 148 Ala. 283. The defendants are not entitled to set up an outstanding title in a third person, with which he does not connect himself.

DORTCH, MARTIN & ALLEN, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—This suit was brought by the appellants to recover of the appellees the value of three bales of cotton.

It appears from the bill of exceptions that Mrs. Jane Bradford is a widow, and, at the time the three bales of cotton were grown, was living with her six minor children on 60 acres of land, which constituted her husband's homestead—and evidently all the land he had—at the time of his death, which occurred about eight years previously. It appears that from the time of her husband's death up to the institution of this suit the widow remained on the land with her children, and that she and her children cultivated the land and lived out of the crop so raised. No dower was ever assigned the widow, and no homestead was ever set apart to her. When the husband died, there were seven minor children. At the time this suit was brought, there were six, and they all lived on the above land with their mother, as above stated. One of the said minor children was F. F. Bradford, who was 17 years old. On the 16th day of March, 1910, he bought a mule from the appellants, and gave to them his note, secured by a mortgage on the mule, on a horse, and on the crops to be grown by him during that year. The mother testified that she knew that her son had bought the mule, and that it was used, along with a horse, in making the crop that year, but that she did not know that he made or authorized him to make the mortgage. She further testified: "There were six minor children, at the time this transaction about the crop was made, there on the place living with me. All of them took part in making the crop, every one of them. All worked there together in making the crop. I supported all of the children. * * * I do not know how much cotton I made last year. I do not know even how much of the 60 acres I had in cultivation." In

other words, the testimony of Mrs. Broadford shows
that all of the crop raised by her minor children, in-
cluding F. F. Bradford—in law her servants—was her
crop, and that the cotton in controversy was *her* cotton,
and not that of F. F. Bradford; that F. F. Bradford
had no crop to mortgage; and that therefore the mort-
gage made by him to appellants conveyed to them no
title.

The only possible theory in this case upon which the
right of appellants to recover could be predicated would
be that the widow authorized F. F. Bradford, for her, to
execute the mortgage; that, in fact, when he executed
the mortgage, he was acting for her. There is absolute-
ly no evidence tending to show that Mrs. Bradford ex-
pressly authorized the execution of the mortgage; and
certainly, under the evidence in this case, the trial judge,
sitting as a jury, had a right to find that the evidence
failed to disclose that she, after her husband's death, by
her course of dealing with appellants or others, had
estopped herself from denying that F. F. Bradford, by
the execution of a mortgage, had the right to pledge the
crops grown by her and her family to the payment of a
debt.—*Goetter v. Norman,* 107 Ala. 585, 19 South. 56.

There is no evidence in this case tending to show that
F. F. Bradford had been emancipated by his mother, or
that he raised a separate crop with the understanding
that it was to be his own. Mrs. Bradford received the
proceeds of the crop, and even if emancipation had been
shown and a separate crop grown by F. F. Bradford, his
mother had the right, at any time before the delivery of
the cotton to appellants, unless, by her acts, she had
estopped herself from so doing, to have revoked her
acts of emancipation, and to claim the crop or its pro-
ceeds as her own. There was evidence tending to show
that the cotton was sold by F. F. Bradford for the bene-

fit of his mother, with her knowledge and consent, and that she received the proceeds.—*Thos. J. Murphy v. Farmers' Union Warehouse Co.,* 4 Ala. App. 439, 58 South. 667.

As F. F. Bradford had no crop to mortgage to appellants, and as the mortgage executed to them by him was abortive and ineffectual for any purpose, the principles announced in *Hooper v. Payne,* 94 Ala. 223, 10 South. 431; *Riley v. Dillon,* 148 Ala. 283, 41 South. 768, and *Marks v. Robinson,* 82 Ala. 69, 2 South. 292, have no applicability to the facts of this case.

There is abundant evidence in the record to sustain the judgment of the court below, and its judgment is therefore affirmed.

Affirmed.