# Phillips-Neely Mercantile Co. v. Banks.

## Destroying Lien.

(Decided June 21, 1913. Rehearing denied July 8, 1913.
63 South. 31.)

1. *Frauds; Statute; Agreements Not to be Performed Within the Year.*—A verbal contract entered into in August or November for the rent of land for one year to begin January 1, following, is obnoxious to subdivision 1, sec. 4289, Code 1907, since it is not to be performed within twelve months from its making.

2. *Same; Effect of Performance.*—A verbal contract when fully performed becomes a binding contract from its inception under the doctrine of relation, although originally voidable as obnoxious to the statute of frauds.

3. *Mortgages; Crops; Interest of Mortgagor.*—In order for a mortgage on crops to be grown in the future to create a lien on such crops, the mortgagor must, at the time of the execution of the mortgage, have owned or had some interest in the lands on which the crops are to be grown.

4. *Same.*—A verbal rental contract will create a sufficient interest in the land to support a mortgage on crops to be grown thereon, although the contract could be avoided on account of the statute of frauds, such contract being merely voidable and not void.

APPEAL from City Court of Gadsden.

Heard before Hon. JOHN H. DISQUE.

Action by the Phillips-Neely Mercantile Company against T. C. Banks, for damages for destruction of a lien. Judgment for defendant and plaintiff appeals. Reversed and remanded.

J. R. FORMAN, for appellant. The benefit of the statute of frauds is not available unless specially pleaded by one having a right to set up the defense, and such contracts are voidable merely and not void, and a stranger to the contract cannot set up its invalidity.—*Marsh v. Frick,* 1 Ala. App. 649; *Carter v. Fisher,* 127 Ala. 53; *Kling v. Tunstall,* 124 Ala. 268; *Strauss v. Elting,* 110 Ala. 132; *Harper v. Campbell,* 102 Ala. 342, and author-

ities there cited. A verbal contract fully performed is binding although originally obnoxious to the statute.— *Gafford v. Stern*, 51 Ala. 444; *Myers v. Mitchell*, 75 Ala. 475; *Shapespere v. Alba*, 76 Ala. 351; *Lavender v. Hall*, 60 Ala. 214; *Bains v. Wells*, 107 Ala. 569; *City of Greenville v. Greenville Water Works*, 125 Ala. 510. The mortgagor of crops must have some interest in the land at the time of executing the mortgage to create a lien by his mortgage.—*Burns v. Campbell*, 71 Ala. 289; *F. U. W. Co. v. McIntosh*, 56 South. 103; *Young v. Hall*, 4 Ala. App. 603.

GOODHUE & BRINDLEY, for appellee. At the time Sanford executed a mortgage to appellant he was without such interest in the land as would create a lien on the crops to be grown thereon.—*Young v. Hall*, 4 Ala. App. 603; *F. U. W. Co. v. McIntosh*, 1 Ala. App. 407; *McNeel v. Henderson*, 1 Ala. App. 405. Under the present statute, contracts which violate the statute of fraud, are void and not voidable.—*Prestwood v. Carleton*, 162 Ala. 342; 20 Cyc. 279; 71 Minn. 114; 22 Wis. 501; 57 Mo. 241; *Flinn v. Barker*, 64 Ala. 193.

THOMAS, J.—During the month of August or September, 1910, one J. F. Sanford verbally rented from Luke Stephens a farm in Etowah county, Ala., for the year 1911. He was to get possession on January 1, 1911, or sooner if the tenant for 1910 should before that date finish up his crop and move. During Christmas week of 1910 the tenant did move, and Sanford then entered into possession of the premises, and raised a crop of cotton thereon in 1911, a part of which he sold and delivered to the defendant, T. C. Banks. The plaintiff, appellant here, brought this suit against said Banks, seeking thereby to recover from him for the de-

struction of an alleged lien claimed by it on the cotton so sold him by the said J. F. Sanford.

This lien arises, if at all, by virtue of a mortgage executed to plaintiff by said J. F. Sanford on October 29, 1910, which was duly recorded in the probate office of Etowah county on the 2d day of November, 1910, and which covered, among other property, "the entire crop of cotton, corn, etc., which the said Sanford might raise, or cause to be raised, or which might accrue to him as rent, on his own or any other lands in Etowah county, Alabama, during the year 1911." It will be ·observed that this mortgage was executed after said Sanford had made the said parol rental contract with Luke Stephens, but before said Sanford got possession of the rented premises, and before the commencement of the rental term. It is clear that that contract of renting, being only verbal, and not to be performed within 12 months from its making, was obnoxious to subdivision 1 (Code 1907, § 4289) of our statute of frauds.—*White v. Levy,* 93 Ala. 484, 9 South. 164; *Oliver v. Gold Life Ins. Co.,* 82 Ala. 417, 2 South. 445; *Martin v. Blanchett,* 77 Ala. 288; *Bain v. McDonald,* 111 Ala. 269, 20 South. 77. It being so, and that, too, at the time that the mortgage was executed to plaintiff on the crops to be grown on the premises embraced in it, did Sanford, the mortgagor and lessee under said contract, have by virtue of the contract such an interest in the lands covered by it that he could make a valid mortgage of the crops to be grown thereon for the year of the lease, when such crops were in fact subsequently grown by him thereon, in pursuance of the contract of lease—neither he nor the lessor, Stephens, ever having attempted to avoid the contract, but each having fully performed .it according to its terms, before this suit was brought by plaintiff, the mortgagee, against Banks, a third party,

for the conversion of a part of such crops? The lower court held that the mortgage conveyed no interest in the crops, and accordingly there was verdict and judgment for defendant. In this, we are of opinion the court was in error.

While it is true that in order for a mortgage to create a lien on crops to be grown in the future, the mortgagor must, at the time of the execution of the mortgage, have owned or had some interest in the lands on which the crops are to be grown (*Windham v. Stephenson,* 156 Ala. 345, 47 South. 280, 19 L. R. A. [N. S.] 910, 130 Am. St. Rep. 102; *McNeill v. Henderson,* 1 Ala. App. 405, 55 South. 269; *Farmers' Union v. McIntosh,* 1 Ala. App. 407, 56 South. 102; *Young v. Hall,* 4 Ala. App. 603, 58 South. 789), yet we think that an interest sufficient to this end may be created by a contract for the lease of the lands, although the contract is of such a character that, on account of the statute of frauds, it might be subsequently avoided, before its performance, by either of the parties to it, without incurring a legal liability to the other (*Kling v. Tunstall,* 124 Ala. 268, 27 South. 420). Such a contract is not void, but is merely voidable.—*Bain v. Wells,* 107 Ala. 562, 19 South. 774; *Cooper v. Hornsby,* 71 Ala. 62; *Comer v. Sheehan,* 74 Ala. 452; *Shakespeare v. Alba,* 76 Ala. 351. The case of *Prestwood v. Carlton,* 162 Ala. 346, 50 South. 254, cited by appellee, does not decide to the contrary.

The fact that the contract might have been avoided does not destroy its efficacy or vitality when it has not been avoided, but has been, as here, fully performed.— *Kling v. Tunstall, supra.* By that performance, under the doctrine of relation, it becomes and was a binding contract from its inception, creating then a leasehold interest for the year 1911 in the lands on which the mortgaged crops were raised. The only contingency

which could have destroyed it never happened; hence we are of opinion that the lien of the mortgage attached to the crops raised, under that contract, on the lands.

Of course, when the mortgage was given it was possible that the contract might later, before the anticipated crops came into existence, be avoided, and the mortgage thus rendered nugatory. This same element of uncertainty, different only in character, would have existed, however, even if the contract of rental had been in writing, and had met every requirement of the statute of frauds; for even then the mortgagor could have declined to perform the contract, or the lessor could have breached it by conveying the lands to an innocent purchaser, without notice of the contract. In either event no crops subject to the mortgage would have come into existence, yet it is not to be doubted that in such case the mortgage would have been valid when made. In case of such a breach of the rental contract, whether by the lessor or the lessee, the position of the mortgagee of the lessee is the same, whether the contract be one obnoxious or one not obnoxious to the statute of frauds; since in each such case no crops would ever come into existence to which the mortgage could attach. Why, then, should not the position of the mortgagee be the same when the rental contract (whether it be one obnoxious or one not obnoxious to the statute of frauds) is faithfully kept by the lessor and the lessee, and when, in pursuance of it, crops are brought into existence to which the mortgage can attach? If the breach of each by either of the parties visits the same incidental misfortune on the mortgagee, it would seem that the performance of each by both the parties ought to confer on him, as such mortgagee, the same incidental benefit. It is not within his power to force either the breach or performance of either class of contract. As to whether

his rights as a lienholder on the crops to be grown ever mature depends entirely upon the action of the parties to the rental contract, be it obnoxious or not to the statute of frauds; depends on whether they keep it or breach it. Whether it be the one class of contract or the other can therefore make no difference to him or in his rights. As between the parties themselves, there is no difference between the two classes of contracts of the kind here considered, provided both of them be kept. The only instance in which a difference would arise would be in case of a breach, which has not here occurred. In such a case, the contract obnoxious to the statute of frauds would impose no liability on the party breaching it, if the statute were pleaded; while the one not obnoxious, if so breached, would.

We are therefore of opinion that the rental contract here considered did confer such an interest on the lessee, in the land rented, that he could validly mortgage the crops to be grown on it for the year of the lease, and that when those crops came into existence, the contract of rental having been kept, his lien attached. The Supreme Court of Mississippi have had this identical question under consideration under a state of facts on all fours with those here, and their conclusion supports that we here reach.—*Grisham v. Lutric*, 76 Miss. 444, 24 South. 169. No cases to the contrary are cited by appellee, and we find none.

The judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.