# Maybank *v.* Lumpkin.

*Trover, Case and Assumpsit.*

(Decided November 7, 1914.  66 South. 584.)

1. *Mortgages; Landlord's Lien; Priority.*—Where a tenant executed a chattel mortgage on a crop and then contracted with a cropper to raise a crop on shares on part of the land, the tenant owned the crop subject to the cropper's lien provided by section 4743, Code

1907, which lien was superior to the mortgage as to the cropper's interest in the crop.

2. *Same.*—Where a part of a tenant's crop was raised by a son of the tenant without a cropping contract, the entire crop so raised was subject to a mortgage executed by the tenant on his entire crop.

3. *Same; Minors; Evidence.*—On the issue as to whether a cropping contract was executed between a tenant and his son so as to relieve the son's share of the crop from the lien of the tenant's mortgagee, evidence that the son was a minor was admissible in determining whether such an agreement existed.

4. *Appeal and Error; Harmless Error; Pleadings.*—Where a party receives the full benefit both as to proof and the court's charge, under the plea of the general issue that he would have received under his special plea, it is harmless error to sustain demurrer to such special plea.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, Jr.

Action by J. H. B. Lumpkin against T. D. Maybank in trover, case, and assumpsit. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The complaint alleges the execution to Ingram & Co., by W. R. Patty, on December 3, 1910, a mortgage conveying to said Ingram & Co., the entire crops of corn, cotton, etc., and all other crops that the said W. R. Patty raised or caused to be raised during the year 1913 on any lands in Calhoun county, also another mortgage executed January 9, 1911, by and between the same parties, with the same securities, and alleges that at the time of the execution of the mortgage that said Patty had leased a certain farm in Calhoun county, the property of Mrs. Mattie E. Lumpkin, for the years 1911, 1912, and 1913, and that during the year 1913 the said Patty raised or caused to be raised on said land in Calhoun county a crop of cotton, and that defendant received on the dates set out in the complaint 8 bales of this cotton, and that on December 15, 1911, the said Ingram & Co. transferred, for a valid consideration, the mortgages and debts thereby secured to plaintiff, and

that said mortgages and said debts are now due, and
have been the property of plaintiff continuously since
said December 15, 1911; that defendant received and
diverted the cotton to his own use, and thereby de-
stroyed plaintiff's lien under the said mortgages, and ren-
dered impossible the enforcement of plaintiff's lien on
said coton. The second count is like unto the first, as
is the third and fourth. The sixth count is for money
had and received for the use of plaintiff. The com-
plaint was afterwards amended to show the proper rec-
ordation of said mortgages in the office of the judge of
probate of Calhoun county, and also to show that the
lease mentioned in the complaint had been taken by
said Patty before the execution of said mortgage to In-
gram & Co. The defense set up, among others, was that
the cotton alleged to have been received and converted
was grown or raised by one Andrew Patty, under an
agreement between him and W. R. Patty, whereby said
W. R. Patty furnished the land and teams to cultivate
it, and said Andrew Patty furnished the labor to cul-
tivate said land, with the stipulation to divide the crop
share and share alike, and that said Andrew Patty sold
the cotton so raised under said agreement, and paid,
or caused to be paid, to plaintiff one-half of the pro-
ceeds of said sale or sales, and plaintiff accepted the
same, being a portion or part thereof realized from the
sale of part of said cotton, which belonged to said W.
R. Patty under said agreement. The third plea alleges
these facts, and adds that the said Andrew Patty culti-
vated said lands and raised and gathered the crop of
cotton thereon, of which the cotton alleged to have been
received and converted by defendant was a part, and
that plaintiff, with knowledge or notice of these facts,
accepted and received, and still holds, or has converted
to his own use, one-half of the proceeds of said coton

sold by said Andrew Patty to defendant; wherefore defendant says that plaintiff was estopped to maintain this action. Plea A sets up the statute of frauds, in that only a verbal agreement had been made with Mrs. Lumpkin for the rent of the place for the years 1911, 1912, and 1913, and that said Patty had only the verbal agreement for the lease at the time the mortgages were executed.

JAMES F. MATTHEWS, for appellant.

KNOX, ACKER, DIXON & STERNE, for appellee.

ANDERSON, C. J.—The plaintiff in this case, while the husband of the landlady and owner of the land, did not seek a recovery under a landlord's lien, but as the assignee of mortgages executed by W. R. Patty to Ingram & Co., and which had been duly recorded. These mortgages conveyed all right, title, or interest in the crop that the said W. R. Patty had in same, whether he grew the same as tenant or as proprietor, and the plaintiff was entitled to recover so much of the value of same as was sufficient to satisfy any unpaid balance due upon his mortgages. It matters not whether the lease was within or without the statute of frauds, or whether or not the plaintiff had the right to testify to transactions with W. R. Patty, since deceased, as the one fact stands undisputed, and is established by the defendant's testimony, that W. R. Patty was the owner of the crop and in control of the land in 1913, the year the cotton in controversy was grown; and the sole question to be determined is whether or not the mortgages covered all of the crop or were subordinate to the interest therein claimed by Andrew Patty, the son of W. R. Patty, under an alleged agreement between them before the crop was planted, wherein the elder Patty

furnished the land and team, and Andrew Patty the labor.

If this claim was true, W. R. Patty owned the crop, but it was subject to the lien of Andrew Patty under section 4743 of the Code of 1907, and which was superior to the mortgage lien as to his part of the crop.

On the other hand, if this agreement was not made, the entire crop was subject to the plaintiff's mortgage, and this issue was fairly and clearly submitted to the jury, who found that no such agreement existed. It may also be true that Andrew Patty and his mother testified to the existence of the contract, but there were sufficient facts and circumstances to create a contrary inference and to make it a question for the jury; hence there was no error in refusing the general charge requested by the defendant.

There was no reversible error in sustaining the plaintiff's demurrer to defendant's special plea 3; for, whetha a good plea or not, the defendant got the full benefit of same under the general issue, both as to proof, and in the charge of the court.

The age of Andrew Patty was a legitimate question of inquiry, in determining whether or not there was such an agreement as he attempted to show between himself and his father. While not conclusive on him, nor prohibitive of the contract, if he was a minor, yet the fact that he was a minor and living with his father was a circumstance for the jury, in determining whether he was cultivating the crop for his father as a son and member of the family, or under an independent contract such as he claims was in existence.

The judgment of the city court is affirmed.

Affirmed.

MAYFIELD, SOMERVILLE, and GARDNER, JJ., concur.