# Landrum & Co. *v.* Wright, *et al.*

## *Claim Suit:*

(Decided November 24, 1914. 66 South. 892.)

1. *Landlord and Tenant; Liens; Advances.*—Advancements made by a subsequent landlord to a tenant to enable the tenant to procure a release of his produce from the lien of a prior landlord, and remove and consume the same in making a crop on the lands of the subsequent landlord are advances for the well being and sustenance of the tenant within the purview of sections 4734-4736, Code 1907, giving the subsequent landlord a lien for such advances.

2. *Same; Lien; Estoppel.*—Where a tenant induced a subsequent landlord to believe that a third person had a landlord's lien on produce, and that it was necessary to pay a lien to permit the tenant to remove the produce, and enable him to make a crop on the land of the landlord, paying the supposed lien, the tenant and his chattel mortgagee were estopped to deny the lien.

3. *Estoppel; Acts Constituting.*—An estoppel is a preclusion of a person to assert a fact which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which he has by an act in pais induced another to believe and act on to his prejudice.

4. *Frauds; Statutes; Executed Contract.*—A parol contract within the statute of frauds is not absolutely void, and when it has become executed, the statue is not applicable.

5. *Appeal and Error; Review; Immaterial Question.*—Where the affirmative charge is properly given, other errors committed against the party complaining are immaterial and will not be considered.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Attachment to enforce a landlord's lien sued out by T. L. Wright and others, against one Mooney, with a claim to the property interposed by Landrum & Company under a mortgage executed by Mooney. Judgment for plaintiffs and defendants appeal. Affirmed.

[Landrum & Co. v. Wright, et al.]

BULGER & RYLANCE, for appellant. The contract was clearly within the statute of frauds, and the court erred in permitting the question to the witness Langley, "did anyone become responsible for the debt that he owed you, or for the debt for which you were responsible?"— *Webb v. Hawkins L. Co.,* 101 Ala. 630; *Strauss v. Elting,* 110 Ala. 132; *Pake v. Wilson,* 127 Ala. 240. In any event, the payment by Wright of a sum claimed by Mooney's prior landlord was not an advancement within the statute, and Wright thereby acquired no lien.— Secs. 4734, 4736, and authorities there cited. For this reason also the affirmative charge for plaintiff was improperly given.—*Clark v. Jones,* 87 Ala. 474; *Bell v. Hurst,* 75 Ala. 44; *Boykin v. Dohlonde,* 37 Ala. 576. On the uncontradicted evidence, and on the authorities supra, claimant was entitled to the property levied upon by virtue of his title to same under his mortgage.

JAMES W. STROTHER, for appellee. No brief reached the Reporter.

THOMAS, J.—The appellees, T. L., J. E., and O. M. Wright, sued out an attachment against one Mooney, for the purpose of enforcing an alleged landlord's lien claimed by them for advances—all rents having been previously paid—and caused the writ to be levied upon the crops grown by said Mooney during the year 1912 on the rented premises. The appellants, Landrum & Co., interposed a claim to the property, which claim was predicated upon a mortgage shown without dispute to be unsatisfied and to have been duly executed to the claimants by Mooney on January 15, 1912, long before the issuance and levy of the attachment. The right of the plaintiffs to subject the property levied upon to the satisfaction of the attachment writ depended, therefore,

upon whether or not they had, as alleged, a landlord's lien on the property for advances; otherwise it is conceded that the claimants were entitled to recover under the mortgage, as, in such event, the mortgage was 'the superior lien.—Code, § 4734.

The material facts relied on as constituting such landlord's lien in the plaintiffs were without dispute, and, at the conclusion of the evidence, the court, at the request of plaintiffs, gave the general affirmative charge in their favor. The correctness of its action in doing this is the principal point before us for decision. Summarizing these facts, they may be stated, in substance, to be as follows: The defendant in attachment, said Mooney, during the year 1910 lived on and cultivated as a tenant the lands of one W. A. Langley, and the latter as landlord, in order to enable Mooney to procure supplies with which to make a crop that year, applied, with Mooney's consent, to the Camp Hill Supply Company to furnish them, which they did, directly to Mooney, entering the charge therefor upon their books against Mooney and Langley jointly, and looking to both, as was undisputed, for payment—Langley having at the time verbally agreed "to see it [the account for such supplies] paid." At the end of the year Mooney paid up all rent due Langley, but failed to pay either him or the Camp Hill Supply Company for the advances mentioned, and desired to move himself and his farm produce (consisting of corn, fodder, cotton seed, etc., raised that year on Langley's place and of the aggregate value of about $200) to the plantation of one J. T. Wright, from whom he, Mooney, had rented land for the following year, 1911. Langley, as landlord, interposed an objection and forbade Mooney to move any of the produce mentioned, until he, Mooney, first paid him for the said supplies furnished by the Camp Hill Supply Company (amount-

[Landrum & Co. v. Wright, et al.]

ing to several hundred dollars), for which Langley was responsible in the way stated. Mooney, being without funds, after informing Wright of the fact and that he could not get his produce from Langley's premises until he paid Langley for the advances mentioned, applied to Wright, as his new landlord, to advance him the necessary funds to that end. Thereupon Wright, on December 19, 1910, wrote, signed, and sent to Langley by Mooney a note saying, in substance and effect, that he, Wright, would be responsible for the amount due by Mooney, and to let him move. Langley accepted this as entirely sufficient, and then and there consented for Mooney to remove the produce, which he did, to Wright's premises, which he cultivated during the years 1911 and 1912. In December, 1911, before Wright ever paid the debt of Mooney for which he so became responsible, Wright died intestate, leaving no debts except the obligation stated, and leaving as the only heirs and distributees of his estate his three sons, who are the present plaintiffs, and who, after their father's death, paid said debt of Mooney, for which Wright had so become responsible; and, upon the refusal of Mooney, who remained on the same lands as tenant, to repay them, they sued out the present attachment on, to wit, October 17, 1912, to enforce an alleged landlord's lien therefor—Mooney having before the attachment paid up all rent and other advances. It was also proved without dispute that there never was any administration upon Wright's estate or any necessity therefor. We are of opinion that under these undisputed facts the court committed no error in giving the general affirmative charge for the plaintiffs. They, as the heirs of their father, were his successors in interest and as such admittedly stood and stand in his shoes, and the case may, for all practical purposes,

be treated as if he were the plaintiff and had himself paid the said debt which he assumed for Mooney.

Our statute gives to the landlord a lien, which continues and attaches to the crop of the succeeding year—. "for advances made in money, or other thing of value, either by him directly, or by another at his instance and request for which he became legally bound or liable at or before the time such advances were made, for the sustenance or well-being of the tenant or his family, or for preparing the ground for cultivation, or for cultivating, gathering, saving, handling, or preparing the crop for market."—Code, §§ 4734-6.

The produce (corn, cotton seed, fodder, etc.) which, by the assumption on the part of Wright of the debt mentioned, Mooney was enabled to get released from Langley's landlord's lien and to remove and consume in the making of the crop on Wright's premises, were such in kind and character as clearly to fall within the class of articles which, within the meaning of the statute quoted, would constitute "advances for the well-being and sustenance of the tenant and his family," etc. If Wright had bought them outright and furnished them directly to Mooney, or with Mooney's consent had procured another to do so by becoming, at or before the time that that other did so, legally responsible for them, undoubtedly Wright would have had the landlord's lien here contended for.—Code, § 4734; *Clanton v. Eaton*, 92 Ala. 612, 8 South. 823; *Ragsdale v. Kinney*, 119 Ala. 461, 24 South. 443.

We can see no difference, and hold that there is no difference, in principle between such a case as the latter and the case here, where Wright by assuming with Mooney's consent the latter's debt to Langley, who as an incident of such debt had a landlord's lien upon the property, induced Langley to release his lien and there-

by enabled Mooney to get and use the property, which Mooney was without right to remove until he paid off Langley's lien, except with Langley's consent, and which if, without such consent, he had attempted to remove would have authorized Langley to attach the property for the enforcement of his lien.—Code, § 4739; *Bell v. Hurst,* 75 Ala. 44; *Clanton v. Eaton,* 92 Ala. 615, 8 South. 823; *Gerson & Sons v. Norman,* 111 Ala. 433, 20 South. 453; *Donaldson v. Wilkerson,* 170 Ala. 507, 54 South. 234; *Johnson v. Thompson,* 185 Ala. 215, 64 South. 555.

It is needless to consider whether, on account of the statute of frauds (Code, § 4289, subd. 3), it was necessary for Wright's said promise to Langley to be in writing (as bearing on which see *Westmoreland v. Porter,* 75 Ala. 452; *Thornton v. Williams,* 71 Ala. 555), or whether, if it was so necessary, the note written by Wright to Langley was or not a sufficient compliance with the requirement of the statute in this particular, since Wright's liability under that promise and contract was never repudiated by him, or by the plaintiffs, or attempted to be, but such contract was, after his death, fully executed and performed by the plaintiffs, his sons and successors in interest, who paid the sum for which their father had, with Mooney's consent, so become responsible. Contracts to which the statute of frauds is applicable are not, as a result of such statute, absolutely void, but are merely voidable.—*Phillips-Neely Mer. Co. v. Banks,* 8 Ala. App. 552, 63 South. 31; *Bain v. Wells,* 107 Ala. 562, 19 South. 774; *Cooper v. Hornsby,* 71 Ala. 62; *Comer v. Sheehan,* 74 Ala. 452; *Shakespeare v. Alba,* 76 Ala. 351. And when they become executed, the statute ceases to have any application to them.—*Lagerfelt v. McKie,* 100 Ala. 430, 14 South. 281; *Gordon v. Tweedy,* 71 Ala. 202; *Slatter v. Meek,* 35 Ala. 528.

The main insistence in the case, however, is that Langley had no landlord's lien, and consequently that he had nothing to release, and released nothing—no right, title, or interest in the property—when he, upon the assumption by Wright of the debt mentioned, consented to the removal of the property by Mooney; that Langley's promise, previously made to the Camp Hill Supply Company, before they furnished the advances to Mooney for the year 1910, to the effect that he would see the account for them paid, was, under the undisputed facts, only a collateral promise, and being as such obnoxious to the statute of frauds (*Webb v. Hawkins Lumber Co.,* 101 Ala. 630, 14 South. 407), and not having been executed at the time he forbade Mooney to remove the property, was without efficacy to give Langley any landlord's lien on the property, or any right to prevent Mooney from removing it; hence that Wright's assumption of the debt for Mooney accomplished nothing in the way of procuring for him any "advances" in the sense in which that term is employed in the statute cited.

Granting, without deciding, the correctness of both the premises and the conclusion, a sufficient answer is that Mooney and those claiming through him (as are the claimants) are estopped by the conduct of Mooney from denying as against Wright or his successors in interest (as are the plaintiffs) that Langley had a lien upon the property and a right to forbid Mooney to remove it. Mooney, as is a fair implication from the undisputed facts, induced Wright to believe that there was such a lien and that it was necessary that the debt claimed by Langley, which it secured, be paid off in order to entitle him, Mooney, to remove the property, and, as is also a fair implication from the undisputed evidence, a belief on the part of Wright in the existence of such lien and necessity is what induced him to assume the debt.

Mooney is therefore in no position now to say, nor can the claimants for him say, that no such lien or necessity in fact existed, and that he had a right to remove and use the property without paying such debt. "An estoppel" may be defined in a general sense to be "a preclusion of a person to assert a fact which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which he has, by an act in pais induced another to believe and act upon to his prejudice."—11 Am. & Eng. Ency. Law, 387; *Scharfenburg v. Decatur*, 155 Ala. 651, 47 South. 95; 6 Mayf. Dig. 329; 5 Mayf. Dig. 358; 3 Mayf. Dig. 409.

Being of opinion, as expressed, that the affirmative charge was properly given against the appellants, it becomes unnecessary to consider the other alleged errors assigned by them.—*Western Union Tel. Co. v. Whitson*, 145 Ala. 426, 41 South. 405; *Griffin v. Bass Foundry Co.*, 135 Ala. 490, 33 South. 177; *Bowlnig v. M. & M. Ry. Co.*, 128 Ala. 556, 29 South. 584.

The judgment appealed from is affirmed.

Affirmed.