# Hughes & Tidwell Sup. Co. *v.* Bussey.

### Trover and Conversion.

(Decided November 25, 1915. Rehearing denied January 11, 1916.
70 South. 997.)

1. **Mortgages; Crops; Transfer of Legal Title.**—Under the provisions of § 4894, Code 1907, the mortgage executed after Jan. 1 of the year in which the cotton was raised, conveying to the mortgagee the entire crop of cotton, etc., conferred on the mortgagee the legal title to cotton raised by the mortgagor on land of which he had possession under a lease at the time of the execution of the mortgage.

2. **Same; Transfer of Crops; Effect.**—After the execution of such a mortgage, and as against the mortgagee, the mortgagor could not emancipate his minor son and at the same time retain him as a member of the family, and rent him any part of the premises on which the crops were to be grown, so as to give him a title superior to that of the mortgagee to such part of the crop as the son might raise.

3. **Same; Action Against Purchaser; Prima Facie Case.**—Where the mortgagee brought his actoin in trover against a purchaser of a bale of cotton covered by a mortgage on the entire crop of cotton, etc., raised or to be raised by the mortgagor during the year, plaintiff made out a prima facie case by offering in evidence the mortgage and proving that the bale was raised during the year covered by the mortgage on lands in that county in the mortgagor's possession when the mortgage was executed, held under a lease which continued until after the cotton was raised.

4. **Same; Evidence to Overcome.**—Such prima facie case was not overcome by proof that the mortgagor had rented to his son the land on which the cotton was grown, and that the cotton was raised by his son, where there was no evidence as to the rental contract between the father and son, and it did not appear but that the land was rented to the son under such circumstances that the legal title to the crop was in the father under § 4743, Code 1907.

APPEAL from Morgan Law and Equity Court.
Heard before Hon. THOMAS W. WERT.
Trover by E. W. Bussey against the Hughes & Tidwell Supply Company for the conversion of a bale of cotton. Judgment for plaintiff and defendants appeal. Affirmed.

J. R. SAMPLE, and TENNIS TIDWELL, for appellant. E. W. GODBEY, for appellee.

THOMAS, J.—(1, 2) Action of trover by the appellee, Bussey, against appellant, the Hughes & Tidwell Supply Company,

for the conversion of one bale of cotton, which the latter bought from one J. S. Barren, and which the plaintiff claimed under a mortgage executed by said J. S. Barren and others on January 11, 1912, which mortgage conveyed to plaintiff, among other things, "the entire crop of cotton　*　*　*　raised or to be raised by us [the mortgagors], or our family, during the year 1912." At the time of the execution of the mortgage the mortgagor, Barren, had in possession under a lease the lands upon which, during the year 1912, the bale of cotton here in question that was so sold by said Barren to defendant was raised. As a result the mortgage, having been executed after January 1st of the year in which the cotton was raised, conferred on plaintiff the legal title to the cotton (Code, § 4894; *Phillips, etc., v. Banks,* 8 Ala. App. 552, 63 South. 31), and at the conclusion of the evidence, therefore, the court gave the general affirmative charge for the plaintiff as to this bale of cotton; it being undisputed that defendant had bought the same from said J. S. Barren. The defendant complains of the giving of this charge on one ground, and one ground only, to which, in disposing of the case, we will confine our attention, which is based upon the insistence that the evidence was such that the jury might have inferred that said bale of cotton was raised on said premises, not by the mortgagor, J. S. Barren, but by his son, one Jim Barren, a minor, under such circumstances as to make it—the bale of cotton—the property of the son, and not subject to the said mortgage executed by his father to the plaintiff. In other words, the contention is that there was evidence from which the jury might have inferred that after the execution of the plaintiff's mortgage by the father, J. S. Barren, the said Barren did, by agreement with his minor son, said Jim Barren, who remained a part of the father's family during the year, so emancipate the son as to make the product of the latter's labor which might materialize in crops grown on the mentioned place his own property, and not that of the father.

Assuming that there was such an agreement, and assuming its effectiveness in favor of the son in a controversy between father and son as to the title to the bale of cotton—a question we need not consider—such agreement cannot prevail against the title of the plaintiff in this case, to whom the father, before making such agreement with the minor son, executed a mortgage on, to-wit, January 11, 1912, conveying to the plaintiff, as before seen, the entire crop of cotton that might be raised, not only by

him, the father, but also by his family (which included, of course, the minor son in question), during the year 1912 on the land mentioned. As against the plaintiff, to whom the father had thus mortgaged, not only the product of his own labor that might materialize in crops grown on the mentioned premises during the year 1912, but also the product of the labor of his said minor son that might so materialize in crops grown on said premises during said year, the father could not subsequently make a valid agreement with the son whereby the crops resulting from the labor of the son on said premises during said year should become the son's property to the exclusion of the plaintiff, when it appears, as it does from the evidence here, that the son remained during the year a member of his father's family and was cared for as such and used his father's property in making the crop. —*Murphey v. Farmers' Union,* 4 Ala. App. 439, 58 South. 667; *Hood v. Sitz & Co.,* 5 Ala. App. 471, 59 South. 767; *Moody v. Walker,* 89 Ala. 619, 7 South. 246; *Stovall v. Johnson,* 17 Ala. 19; *Godfrey v. Hays,* 6 Ala. 501, 4 1Am. Dec. 58; *Holst v. Harmon,* 122 Ala. 453, 26 South. 157.

We are cited in the brief of appellant's counsel to a recent decision of our Supreme Court, that of *Maybank v. Lumpkin,* 189 Ala. 559, 66 South. 584, which, it is urged, is in conflict with the foregoing holding; but we do not so regard it. The court there, in considering a mortgage materially different in verbiage to that we have here considered, held that a father might, as against the mortgagee, emancipate his minor son after the execution of the mortgage, and rent to him a part of the premises upon which the mortgaged crops were to be grown, so as to confer on the son, even as against the mortgagee, the title to that part of the crops the son might raise on the portion of the premises so rented him. Under the language of the mortgage there under review, we do not question the correctness of the holding of our Supreme Court; for it seems to us that in such case the father would, perhaps, have as much right to emancipate his son and rent him land as he would have to rent land to any other third person; but under the mortgage here, which, as before pointed out, conveyed to the mortgagee, the entire crop of cotton that the mortgagor, or "his family," might raise during the year 1912 on the premises then held by the mortgagor, we are clear, under the authorities before cited, that the mortgagor could not, as against the mortgagee, emancipate his minor son, at the same

time retaining him as a member of his family, and rent to him any part of the premises on which the crops mortgaged were to be grown, so as thereby to give the son a title superior to that of the mortgagee to such part of the crops as the son might raise. Besides, even if this difference between this case and the *Maybank v. Lumpkin Case* did not exist, that case would furnish no authority under the facts of this case, for reversing the lower court in giving the affirmative charge for plaintiff.

(3, 4) The plaintiff made out a prima facie case, so far as the point here considered is concerned, by offering in evidence the mortgage, and by proving that the bale of cotton in question was raised during the year covered by the mortgage on lands in that county in the possession of the mortgagor at the time of the execution of the mortgage, under a lease which continued up to and after the time the bale of cotton was raised. Presumptively, then, the cotton was raised by the mortgagor, and presumptively he had the legal title to it. If he did not, by reason of the fact that it was raised by a tenant of the mortgagor under such circumstances as that the legal title was in the tenant so as to prevent a recovery by plaintiff, as mortgagee, in this action of trover against defendant as the purchaser, then the burden of overcoming the prima facie case made by plaintiff rested on defendant, which was not met, since there was no evidence whatever tending to show the terms of the rental contract between the mortgagor and his son as tenant. For aught to the contrary appearing in the evidence, the father rented the land to the son under such circumstances as that the legal title to the crops raised by him was in the father.—Code, § 4743; *Maybank v. Lumpkin, supra.*

It follows that the judgment appealed from must be, and is, affirmed.

Affirmed.