BOWEN, Presiding Judge.
Jimmy Lee Tate, the appellant, was indicted and convicted for criminal possession of a forged instrument in the second degree. Alabama Code Section 13A-9-6 (1975). He was sentenced as an habitual offender to twenty years’ imprisonment. Three issues are presented on appeal.
I
Tate argues that the trial judge “misapplied the attorney-client privilege in inappropriate circumstances” when he refused to allow defense witnesses, Attorneys Len White and Paul Brown, to testify to prior inconsistent statements made by State’s witness Anthony Ñaman at the preliminary hearing and to whether State’s witness Marguerite Ñaman testified at the preliminary hearing.
*839 Attorney White represented Tate at the preliminary hearing. He testified that at the hearing Ñaman testified that both Tate and co-defendant Sam McCarty were at the window of his store but that McCarty presented the check. He further stated that Ñaman would be mistaken if Ñaman said that he testified at the preliminary, hearing that Tate presented the check. White testified that Mrs. Ñaman did not testify at the preliminary hearing.
The prosecutor then adduced White’s testimony that the defense could have subpoenaed Mrs. Ñaman to testify at the' preliminary hearing even though the State did not. Defense counsel, on redirect examination and in an apparent attempt to explain why White did not subpoena Mrs. Ñaman, attempted to establish that White did not know anything about Mrs. Ñaman until he got to the preliminary hearing.
“BY MS. PERRY (Defense Counsel):
“Q. Len, did you know anything about Mrs. Ñaman until you got to that preliminary hearing?
“A. I knew nothing about a case until— “MR. BEEBE (Assistant District At: torney): We need to approach the bench on something. I’ve been afraid of this.
“(Bench conference:)
“MR. BEEBE: She is waiving attor-, ney-client privilege that I don’t think this Defendant has even been asked about.
“THE COURT: I think that's correct. Let’s get away from the preliminary hearing.
“MR. BEEBE: That’s why I stayed away from it.
“THE COURT: Thank you.”
Defense counsel then completed her redirect examination of witness White, who was then excused.
The defense called attorney Paul Brown, who had represented co-defendant McCarty at the preliminary hearing. When defense counsel attempted to question Brown about his representation of McCarty at that hearing, the prosecutor objected and the following exchange resulted:
“MR. BEEBE: I’m going to object to any statements or testimony from him concerning McCarty because that violates the attorney-client privilege that exists between him and Mr. McCarty, and I think Mr. McCarty ought to be here waiving anything that went on concerning his case.
“MS. PERRY: Judge, Mr. Beebe has no standing to assert the attorney-client privilege.
“MR. BEEBE: I most certainly do.
“THE COURT: Mr. Brown does and I assume that you would.
“MR. BROWN: Yes, I would.
“MS. PERRY: I don’t think we’re going to be violating the attorney-client privilege. I’m just going to go to matters that were conducted — we’re offering this for impeachment of a statement made by Mr. Ñaman today.
“THE COURT: I understand what you’re offering it for. Mr. Brown understands the attorney-client privilege and I’m going to — you do understand it, don’t you?
“MR. BROWN: Yes, sir.
“THE COURT: I’m going to instruct you to invoke it at any time you feel appropriate.
“MR. BEEBE: The problem, Judge, is it prohibits me from cross examining him.
“THE COURT: I understand your problem on that, but I think he’s going to invoke the privilege on any matter.
“MS. PERRY: Judge, we don’t plan on going into anything.
“THE COURT: Okay. Go ahead.”
Defense counsel resumed her direct examination of Brown and the prosecutor stipulated that Mrs. Ñaman did not testify at the preliminary hearing.
On further direct examination by defense counsel, Brown testified that he did not recall Mr. Naman’s testimony at the preliminary hearing that McCarty presented the check to his wife. However, defense counsel persisted:
“Q. Who did he say presented the check at this preliminary hearing? Who did he *840 say under oath that presented that check?
“MR. BROWN: Can I ask you a question real quick? Could we have a bench conference perhaps?
“THE COURT: Come down here.
“(Bench conference:)
“MR. BROWN: Mr. McCarty has entered a plea to this charge, so I don’t see that it would be prejudicial to him.
“MR. BEEBE: Yes, it would be.
“THE COURT: As long as he files a coram nobis—
“MR. BEEBE: That’s the whole thing as Len White testifying. You’ve violated his attorney-client privilege. That guy can sue his butt off now and probably will.
“(Before jury.)
“MR. BEEBE: I’m going to object to the question.
“THE COURT: I’ll sustain.”
The only other reference in the record to the issue now under consideration appears in Tate’s motion for new trial where he alleges that “the trial court misapplied the attorney-client privilege by allowing the State of Alabama to invoke said privilege in inappropriate circumstances, thereby limiting Defendant’s cross examination and presentation of the defense.”
The transcript before this Court leaves us in a state of confusion as to the exact nature of the allegedly confidential information. We are also in doubt over what further information defense counsel desired to elicit from the two witness-attorneys. There was no offer of proof and counsel had already established that Mr. Ñaman testified at the preliminary hearing that McCarty presented the check to Mrs. Ñaman and that Mrs. Ñaman did not testify at that hearing.
We agree with Tate’s appellate counsel that any testimony given by either Tate or McCarty at the preliminary hearing would not constitute a privileged communication between an attorney and his client. Kling v. Tunstall, 124 Ala. 268, 27 So. 420 (1900); C. Gamble, McElroy’s Alabama Evidence, Section 392.04 (3rd ed. 1977). A question does not call for an answer in violation of the attorney-client privilege where the answer is a matter of public record. International Bhd. of Teamsters v. Hatas, 287 Ala. 344, 252 So.2d 7 (1971). The attorney-client privilege of Alabama Code Section 12-21-161 (1975) does not apply where the answer is a matter of public record. Hobson v. State, 425 So.2d 511 (Ala.Cr.App.1982). “The attorney-client privilege does not cover statements which are intended to be communicated to third persons.” McElroy, Section 392.04.
While we agree with counsel that, at least as far as the record demonstrates, her questions did not call for answers in violation of any attorney-client privilege, we do not agree that the trial judge’s actions in sustaining the State’s objections constitute reversible error. Under the facts of this case, the error, if any, is harmless.
The exclusion of testimony does not require a new trial, where the witness on another occasion testified to the same facts. Palmer v. State, 165 Ala. 129, 51 So. 358 (1909). The error, if any, in ruling testimony inadmissible is cured by the prior or subsequent admission of the same evidence. Siebold v. State, 287 Ala. 549, 253 So.2d 302 (1970). “The rule is well established that the refusal to permit a witness to testify to certain facts does not require a new trial where at another time in the course of the trial the same witness is permitted to testify as to those facts.” Woodard v. State, 253 Ala. 259, 264-65, 44 So.2d 241 (1950). See also Dyer ¶. State, 241 Ala. 679, 4 So.2d 311 (1941) (trial court’s error in advising physician, testifying for defendant, that communications by patient to physician were privileged, was rendered harmless by subsequent full and complete examination of such physician).
II
Based on the same facts as asserted under Issue I, Tate contends that the trial court improperly and prejudicially limited *841 the presentation of the defense at trial. Our further consideration of those facts only confirms our conclusion that the error, if any, was harmless and did not prejudice the defense.
Anthony Ñaman owned Naman’s Super Market in Mobile. On direct examination, he testified that Tate presented Mrs. Ña-man a check which had been stolen from Clinton Requer. He indicated that someone was with Tate when Tate presented Requer’s identification and check for payment.
On cross examination, Mr. Ñaman testified that he did not remember what he stated at the preliminary hearing but that “to his recollection” he believed he indicated that Tate had presented the check. He testified that Tate handed the check to Mrs. Ñaman, who in turn gave it to him. The record reveals that defense counsel was given considerable latitude in the scope and means of her cross examination and attempted impeachment of Mr. Ñaman.
Our review of the record convinces us that Tate received a fair trial and that the adverse rulings of the trial judge did not harm the presentation of his defense. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.